FIFTH DIVISION
December 28, 2007

No. 1-06-1663

|  |  |  |
|---|---|---|
| | ) | |
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | |
| PATRICK GORDON, | ) | Honorable |
| | ) | Garritt E. Howard, |
| Defendant-Appellant. | ) | Judge Presiding. |
| | ) | |

JUSTICE O'MARA FROSSARD delivered the opinion of the court:

Defendant, Patrick Gordon after a bench trial was convicted of three counts of aggravated driving under the influence of alcohol, aggravated possession of a stolen motor vehicle, felony driving while his license was suspended or revoked and aggravated fleeing or attempting to elude the police. Defendant was sentenced to 8 years in the Illinois State Penitentiary for aggravated possession of a stolen motor vehicle and 3 years concurrent on all the other felony convictions. Defendant appeals and contends as follows: (1) that the State did not prove defendant guilty beyond a reasonable doubt based on witness testimony and a horizontal gaze nystagmus (HGN) sobriety test; (2) the circuit court erred in admitting the HGN test without a proper foundation and without conducting a hearing to determine that the test is scientifically reliable pursuant to *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923) (*Frye* hearing); (3) defendant is entitled to a credit of $1,744 toward the $1,000 DUI fine, the $1,000 DUI subsequent offense fine, and the $100 Trauma Fund fine; (4) the mittimus should

reflect a conviction for misdemeanor, not felony aggravated fleeing or attempting to elude the police; and (5) the mittimus should be corrected to reflect that the three felony aggravated driving under the influence convictions should merge under the one act/one crime rule. We affirm.

BACKGROUND

On June 28, 2005, Bedford Hayes drove his car to work. Mr. Hayes parked his car in front of his place of work, put the keys in the car's ashtray, and left the car unlocked. When Mr. Hayes returned to his parking space around 12 p.m. that same day, he noticed that his vehicle was gone and immediately notified the Evanston police department.

Mr. James DeClet was at his parent's house on June 28, 2005, in Skokie, Illinois, when he noticed defendant's vehicle. Mr. DeClet noticed that the defendant was driving erratically: first driving slowly, then accelerating quickly, and then stopping suddenly. Mr. DeClet decided to follow this vehicle and call 911 to report that defendant was possibly driving under the influence. Mr. DeClet was able to see in the front seat of defendant's car and testified that he believed that defendant was drunk because defendant's head was bobbing up and down and his eyes were bloodshot. Mr. DeClet then made a second call to 911 to report that defendant's car was zigzagging. Mr. DeClet also gave the 911 dispatcher the license plate number of the vehicle he was following and the dispatcher confirmed that the license plate number matched that of a vehicle that had been reported stolen earlier that day.

Officer Panizo, a police officer for 4½ years, was on street patrol on the date of the incident. Officer Panizo received a radio call from the police dispatcher about a possibly intoxicated driver in a car that had been reported stolen in Evanston earlier that day. Officer Panizo looked for the stolen car and located it stopped at a traffic light. He positioned his car

behind defendant's vehicle and, after activating his lights, exited his squad car and approached the defendant's vehicle from the driver's side. Officer Panizo was dressed in his ordinary police uniform with his badge clearly visible. He ordered the defendant out of this vehicle, but the defendant did not listen. The defendant then proceeded to make a right turn and drive away from Officer Panizo. Officer Panizo immediately returned to his squad car and pursued the defendant with his siren sounding. The pursuit lasted for approximately one mile. Office Panizo testified that, during this chase, the defendant drove the speed limit and obeyed whatever traffic signals, if any, were present.

After Officer Panizo caught up with the defendant, Officer Panizo curbed the defendant's car and stopped in front of defendant's vehicle. By this time, Officer Olkowski had joined Officer Panizo and pulled up behind the defendant's vehicle. Just when Officer Panizo was about to exit his squad car, the defendant accelerated his vehicle and struck the right rear quarter panel of the squad car. After this impact, Officer Panizo exited his squad car and ordered the defendant out of his car. The defendant remained in his car, forcing Officer Panizo and Officer Olkowski to physically remove the defendant from the car. The officers then handcuffed the defendant and confirmed from the license plate of the defendant's vehicle that it had been reported stolen. Officer Panizo noticed that defendant's eyes were bloodshot and watery, he had a strong odor of alcoholic beverage about him, he swayed back and forth when he tried to walk toward the squad car, and his speech was mumbled when he talked to the officers. Officer Panizo then noticed empty beer cans on the floor of the defendant's car. Officer Panizo then took defendant to the Skokie police station and performed the HGN test.

During the trial, Officer Panizo testified that he had administered the HGN test at least 25 to 30 times and that he had received hands-on training as to the proper way to administer the test. He then explained how an officer performs the HGN test on a person who is suspected of being intoxicated. The test is performed by having the suspect focus on a stimulus, usually a pen, placed 12 to 15 inches in front of the suspect's face. The officer then moves the stimulus in different directions and has the suspect follow the movement with his eyes. The object of this test is to detect nystagmus, or jerking of the eyes, and whether the eyes track equally. A suspect is regarded as failing the test if he receives a score of four or more decision points (nystagmus or jerking points).

When Officer Panizo gave the defendant the HGN test, the defendant scored six decision points. The defendant then refused to take any other field sobriety tests. Defendant did agree to take a Breathalyzer test to determine his blood alcohol level, but Officer Olkowski was not able to register a reading because the defendant would not blow into the Breathalyzer long enough for the machine to obtain a reading.

During his career as a police officer, Officer Panizo has witnessed between 50 and 100 people under the influence of alcohol. He has made between 10 and 15 arrests for driving under the influence. Based on his extensive experience, the observations that he made when he pulled over the defendant, and the defendant's failure of the HGN test, Officer Panizo determined that the defendant was under the influence of alcohol.

Defendant did not testify or present any witnesses to rebut the evidence introduced by the State. Defendant was found guilty of three counts of aggravated driving under the influence of alcohol, aggravated possession of a stolen motor vehicle, felony driving while his license was

suspended or revoked and aggravated fleeing or attempting to elude the police. Defendant was sentenced to 8 years for the aggravated possession of a stolen motor vehicle charge and concurrent terms of three years on each of the remaining felonies.

ANALYSIS

I. Sufficiency of Evidence

Defendant's first contention on appeal is that the State failed to prove him guilty beyond a reasonable doubt of felony aggravated driving under the influence of alcohol. In support of that contention, defendant argues that the court found that Officer Panizo's observations of defendant alone were "borderline" in terms of being adequate proof of defendant's intoxication, the only sobriety test performed was the horizontal gaze nystagmus test, and James DeClet, the only other witness who testified defendant was under the influence of alcohol, did not have sufficient time or ability to observe defendant and did not identify defendant in court.

When reviewing a conviction to determine whether the prosecution has satisfied the reasonable doubt standard, the court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis omitted.) *Jackson v. Virginia*, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789 (1979). The *Jackson* standard applies in all criminal cases, regardless of the nature of the evidence. *People v. Pollock*, 202 Ill. 2d 189, 217 (2002). "In conducting this inquiry, the reviewing court must not retry the defendant." *People v. Cunningham*, 212 Ill. 2d 274, 279 (2004). Rather, the reviewing court must examine the record, keeping in mind that it was the trier of fact who saw and heard the witness. *Cunningham*, 212 Ill. 2d at 280. Testimony may be found insufficient under the *Jackson*

standard only where it is clear from the record that no reasonable person could have found the elements of the crime proven beyond a reasonable doubt. *Cunningham*, 212 Ill. 2d at 280.

Section 11-501(a)(2) of the Illinois Vehicle Code provides that an individual "shall not drive or be in actual physical control of any vehicle within this State while" such individual is "under the influence of alcohol." 625 ILCS 5/11-501(a)(2) (West 2004). Accordingly, the prosecution was required to establish that defendant "was in actual physical control" of his car while he was "under the influence." See *People v. Long*, 316 Ill. App. 3d 919, 926 (2000). "A person is under the influence of alcohol when, as a result of drinking any amount of alcohol, his mental or physical faculties are so impaired as to reduce his ability to think and act with ordinary care." Illinois Pattern Jury Instructions, Criminal No. 23.29 (4th ed. 2000). A defendant is guilty of driving under the influence if the prosecution proves that a driver was under the influence of a drug or alcohol to a degree that rendered him incapable of driving safely. *People v. Workman*, 312 Ill. App. 3d 305 (2000).

Defendant acknowledges in his brief, relying on *People v. Janik*, 127 Ill. 2d 453, 461 (1988), that "a conviction for the offense of driving under the influence may be sustained based solely on the testimony of the arresting officer, but that testimony must be credible." However, defendant contends the prosecution failed to prove beyond a reasonable doubt that he was under the influence of alcohol. To prove defendant was under the influence of alcohol, the prosecution must establish that defendant was " 'less able, either mentally or physically, or both, to exercise clear judgment, and with steady hands and nerves operate an automobile with safety to himself and to the public.' " *People v. Bostelman*, 325 Ill. App. 3d 22, 34 (2001), quoting *People v. Seefeldt*, 112 Ill. App. 3d 106, 108 (1983). Scientific proof of intoxication is unnecessary to

6

sustain a conviction for driving under the influence where there is credible testimony from the arresting officer. *People v. Elliott*, 337 Ill. App. 3d 275 (2003).

The record reflects that Officer Panizo and civilian witness James DeClet testified credibly. Each witness corroborated each other's testimony. On a whole their testimony was consistent, believable and unrebutted. James DeClet observed defendant driving in an erratic manner through the alleys in Skokie. Mr. DeClet not only described the erratic driving of defendant as he followed him, but also described defendant's head bobbing up and down. Mr. DeClet gave the police a description of the blue Chevrolet station wagon and the number of the license plate, which matched the car stolen from Mr. Hayes.

Officer Panizo testified as to defendant's appearance, speech, conduct and an odor of an alcoholic beverage on his breath. Officer Panizo indicated he has seen approximately 50 to 100 people under the influence of alcohol during his career as a police officer and has made 10 to 15 DUI arrests. Defendant crashed into Officer Panizo's car but refused to get out of the vehicle, even after ordered to do so by Officer Panizo.

The record contradicts defendant's contention that neither Officer Panizo nor James DeClet observed any driving infraction by defendant. In a phone call to the police, Mr. DeClet told the 911 dispatcher that he saw defendant "blow a stop sign" near Christiana and Lee Streets. Moreover, Officer Panizo observed defendant crash his vehicle into his marked squad car, which was parked directly in front of defendant.

Defendant relies on *People v. Clark*, which reversed defendant's conviction and held that the uncorroborated evidence that defendant smelled of alcohol was insufficient to sustain a conviction. *People v. Clark*, 123 Ill. App. 2d 41, 44 (1970). Unlike *Clark*, in the instant case,

Officer Panizo and James DeClet corroborated one another.

After the bench trial the trial court indicated that the testimony of Officer Panizo and eyewitness James DeClet taken together was sufficient to prove beyond a reasonable doubt that defendant was in actual control of the vehicle while under the influence of alcohol. The experienced trial court noted as follows:

> "The felony DUI counts rest in large part on the driving that was observed by Mr. DeClet. And the Defense is correct that Mr. DeClet never made an in-court identification of the defendant. However, I find that Mr. DeClet's testimony was sufficiently linked to the defendant in that the license number of the car that the officer testified to seeing the defendant in is the same license plate number that Mr. DeClet observed. Evidently he did not get close enough to get a good enough look at the driver to say that this defendant was driving that motor vehicle. But the car was only out of his sight for a matter of minutes. I suppose it's possible somebody else could have jumped into that car and then got pulled over, but that's not likely at all. I think the State has proven that the person that was driving the car when Mr. DeClet was making his observations was in fact the defendant.
>
> The officer's testimony alone regarding intoxication would be a borderline case in my mind. But when I combine what the officer observed and what Mr. DeClet observed relative to the

defendant's driving, this is some very strange driving that the
defendant was doing. He was all over the place, going through
alleys, going north, south, east and west, slowing down, speeding
up. When I combine what Mr. DeClet observed relative to the
defendant's driving habits with the officer's observations, it's clear
to me that Mr. Gordon had no reason being behind the wheel of a
car because he was in no condition to be behind the wheel of a car
and be driving because he was in fact intoxicated. So I think the
State has proven the aggravated DUI counts beyond a reasonable
doubt."

The record supports the trial judge's conclusion that defendant was proven guilty beyond a reasonable doubt. Viewing the evidence as a whole, we cannot conclude that no reasonable trier of fact could have found defendant guilty beyond a reasonable doubt.

Defendant further contends that "reasonable doubt also arises from Panizo's testimony regarding the HGN test he administered to Gordon." We address that contention in the following section.

## II. Horizontal Gaze Nystagmus Test

### A. *Frye* Hearing

The defendant argues that the circuit court erred in admitting the HGN test as scientific evidence without first holding a *Frye* hearing. A *Frye* hearing is used to determine whether the HGN test has been generally accepted in the scientific community as a reliable indicator of intoxication. *People v. McKown*, 226 Ill. 2d 245, 254 (2007). During the last several years the

9

appellate districts in Illinois became divided on the general acceptance of HGN testing. *People v. Wiebler*, 266 Ill. App. 3d 336 (3rd Dist. 1994), and *People v. Buening*, 229 Ill. App. 3d 538 (5th Dist. 1992) took judicial notice of the general acceptance of the reliability of the HGN test as an indicator of alcohol impairment. However, the Fourth District in *People v. Kirk*, 289 Ill. App 3d 326 (1997), challenged the reasoning of *Buening* and *Wiebler* and declined to determine general acceptance based on judicial notice alone. The court in *Kirk* concluded that "HGN evidence is scientific evidence that must meet the *Frye* standard before it is admissible." *Kirk*, 289 Ill. App. 3d at 332.

On September 27, 2007, the Supreme Court of Illinois addressed this issue. *People v. McKown*, 226 Ill. 2d 245 (2007). The court in *McKown* stated that a scientific principle or methodology is proven to be generally accepted in one of two ways: "(1) based on the results of a *Frye* hearing; or (2) by taking judicial notice of unequivocal and undisputed prior judicial decisions or technical writings on the subject." *McKown*, 226 Ill. 2d at 254. After reviewing a large number of judicial decisions, the court recognized that the HGN test is a scientific test because it is based on a "scientific principle that is not common knowledge, *i.e.*, consumption of alcohol causes the type of nystagmus measured by the HGN test." *McKown*, 226 Ill. 2d at 255. Regarding the scientific nature of the HGN test, the *McKown* court further indicated as follows:

> "We agree with those jurisdictions that hold HGN testing to be
> scientific. The average person understands the effect that alcohol
> has on a person's balance and motor skills. For this reason, the
> average person can draw his own conclusion from the results of
> field-sobriety tests such as the walk-and-turn and the stand-on-one-

10

leg. As such, the results of those tests are not deemed scientific evidence. In contrast, the results of an HGN test are meaningless to an average person unless accompanied by expert testimony about what those results mean and what conclusion may be drawn from them. This expert testimony comes from police officers, who must be trained to administer and interpret the HGN test. Because the results of an HGN test require expert interpretation, we join the majority of courts and hold that the results of HGN testing are scientific evidence." *McKown*, 226 Ill. 2d at 256-57.

The court in *McKown* further recognized that a *Frye* hearing is necessary before evidence is admitted if that evidence is scientific and novel. *McKown*, 226 Ill. 2d at 256. The court in *McKown* found that the HGN test is still novel in Illinois because no *Frye* hearing has been conducted in Illinois to determine whether the HGN test has been generally accepted as a reliable indicator of alcohol impairment. *McKown*, 226 Ill. 2d at 257. The court further found the test to be novel because there have been many recent legal challenges to the admissibility of the HGN test in this and other states, which demonstrates that the novelty issue is still unresolved. *McKown*, 226 Ill. 2d at 257-58.

Finally, the Illinois Supreme Court resolved the issue of whether the trial and appellate court in the *McKown* case "erred in taking judicial notice of the general acceptance of the reliability of the HGN test as an indicator of alcohol impairment." *McKown*, 226 Ill. 2d at 258-59. In resolving this issue the *McKown* court took into consideration not only cases from Illinois and around the nation, but also various technical writings. *McKown,* 226 Ill. 2d at 259. The

11

court in *McKown* described in detail how the Fifth District in *Buening* analyzed the rulings of various other jurisdictions regarding HGN tests and "held that a proper foundation should consist of describing the education and experience of the officer who administered the test and by a showing that the procedure was properly administered." *McKown*, 226 Ill. 2d at 259-60, citing *Buening,* 229 Ill. App. 3d at 546. However, the *McKown* court noted that the *Buening* analysis was questioned in *Kirk*, 289 Ill. App. 3d 326. In discussing *Kirk*, the court in *McKown* recognized that while *Buening* took judicial notice of the general acceptance of the reliability of the HGN test, four of the cases from other jurisdictions that *Buening* relied on had "deemed HGN test results to be nonscientific evidence that did not need to satisfy the *Frye* standard." *McKown*, 226 Ill. 2d at 264, citing *Kirk*, 289 Ill. App. 3d at 333.

Finally, the court in *McKown* looked at decisions from several states that require a *Frye* hearing and found that the issue was still unsettled. *McKown*, 226 Ill. 2d at 266. Accordingly, the court held that this evidence does not create the unequivocal or undisputed viewpoint upon which a court can take judicial notice. *McKown*, 226 Ill. 2d at 272. The court in *McKown* rejected the State's additional argument that judicial notice of the general acceptance of the HGN test results can be based on technical writings currently in existence on the subject. The court in *McKown* found that the technical writings "reveal a dichotomy in the scientific community, rather than the unequivocal or undisputed viewpoint necessary for us to take judicial notice." *McKown*, 226 Ill. 2d at 275.

The court in *McKown* concluded that a *Frye* hearing must be held before the results of an HGN test can be admitted into evidence and explained its holding as follows:

"Our holding today does not purport to decide whether the HGN test has been generally accepted as a reliable indicator of alcohol impairment. Rather, we find that this issue cannot be resolved in Illinois on judicial notice alone. In light of the disparate resolutions of the issue in foreign jurisdictions, the varying opinions expressed in articles on the subject, the fact that a *Frye* hearing has never been held on the matter in Illinois, and the fact that, as far as we are aware, the last *Frye* hearing held on this controversial methodology was held in Washington in 2000, we hold that a *Frye* hearing must be held to determine if the HGN test has been generally accepted as a reliable indicator of alcohol impairment." *McKown*, 226 Ill. 2d at 275.

In the factual context of the instant case, we follow the precedent of the Illinois Supreme Court and conclude that a *Frye* hearing is required before the results of an HGN test can be admitted into evidence. Such a hearing is necessary to determine if the HGN test has been generally accepted as a reliable indicator of alcohol impairment. See *McKown*, 226 Ill. 2d at 275.

B. Admissibility of Results of Horizontal Gaze Nystagmus Test

Defendant argues that the court erred when it admitted the results of the horizontal gaze nystagmus test in defendant's trial without a proper foundation and without a determination that the HGN test was scientifically reliable. The prosecution contends that defendant has forfeited his argument that the court erroneously admitted HGN evidence and failed to conduct a *Frye* hearing before admitting HGN evidence because defendant never objected to the admission of the

evidence and never requested a *Frye* hearing.

Defendant responds that he has not forfeited these issues because the evidence was closely balanced and his trial counsel was ineffective for not challenging the foundation for the HGN test results and for not requesting a *Frye* hearing. We are mindful that the plain error doctrine allows review of a forfeited error affecting substantial rights under certain circumstances as delineated by the Illinois Supreme Court in *People v. Herron*, as follows:

> "[T]he plain-error doctrine bypasses normal forfeiture principles and allows a reviewing court to consider unpreserved error when either (1) the evidence is close, regardless of the seriousness of the error, or (2) the error is serious, regardless of the closeness of the evidence. In the first instance, the defendant must prove 'prejudicial error.' That is, the defendant must show both that there was plain error and that the evidence was so closely balanced that the error alone severely threatened to tip the scales of justice against him. The State, of course, can respond by arguing that the evidence was not closely balanced, but rather strongly weighted against the defendant. In the second instance, the defendant must prove there was plain error and that the error was so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process. [Citation.] Prejudice to the defendant is presumed because of the importance of the right involved, '*regardless* of the strength of the

evidence.' (Emphasis in original.) [Citation.] In both instances, the burden of persuasion remains with the defendant." *People v. Herron*, 215 Ill. 2d 167, 186-87 (2005).

The court in *Herron* went on to note that, "[i]n Illinois, the closely balanced evidence prong of the plain-error test guards against errors that could lead to the conviction of an innocent person [citation], while the substantial rights prong guards against errors that erode the integrity of the judicial process and undermine the fairness of the defendant's trial [citations]." *Herron*, 215 Ill. 2d at 186. In the instant case, defendant argues for review of the forfeited error under the first prong of the plain error doctrine. Defendant contends he has not forfeited these issues because he "has shown the evidence at trial was closely-balanced."

Applying the plain error test as articulated in *Herron*, we first determine whether error occurred in the instant case. Specifically, whether the trial court committed error in admitting the HGN evidence without the State providing an adequate foundation and by failing to conduct a *Frye* hearing. For the reasons previously discussed, under the principles articulated by the Illinois Supreme Court in *McKown*, we believe error occurred. A *Frye* hearing should have been held before the results of defendant's HGN test could be admitted into evidence. We note for the record, however, that the experienced trial judge did not have the benefit of the *McKown* opinion and our appellate court had divergent opinions on this issue.

Having determined that admitting HGN evidence without an adequate foundation and failing to conduct a *Frye* hearing was error, we must next determine whether defendant met his burden to show the error was prejudicial. *Herron*, 215 Ill. 2d at 193. Specifically, did defendant show the evidence presented by the State against defendant at trial was "so closely balanced that

the errors threatened to tip the scales of justice against him?" *Herron*, 215 Ill. 2d at 187.

Whether the evidence is closely balanced is a question separate and distinct from whether the

evidence is sufficient to sustain a conviction on review against a reasonable doubt challenge. For

the reasons previously discussed, we find the evidence sufficient to sustain a conviction beyond a

reasonable doubt. However, at this point in our analysis, the issue under plain error review is

whether the evidence is closely balanced.

Defendant argues that the evidence was closely balanced because the evidence was far

from overwhelming and Officer Panizo's testimony about his observations of the defendant's

condition did not prove beyond a reasonable doubt that defendant was intoxicated. Defendant

relies on a statement made by the trial judge that defendant interprets as an indication by the trial

judge of the judge not being convinced that Officer Panizo's testimony proved guilt beyond a

reasonable doubt. We are mindful that testimony from an arresting officer is sufficient to sustain a

conviction for driving under the influence of alcohol and that no scientific proof of intoxication

needs to be offered to sustain the conviction. *People v. Elliott*, 337 Ill. App. 3d 275, 281 (2003).

However, in the instant case, the trial judge did not solely rely on the testimony of the arresting

officer. Rather, the experienced trial judge considered the totality of the evidence, including

Officer Panizo's testimony together with Mr. DeClet's testimony, in concluding the evidence was

sufficient to prove defendant's guilt beyond a reasonable doubt. The record reflects the trial was

not so closely balanced that the error in admitting the HGN test threatened to tip the scales of

justice against the defendant. Rather, the testimony of a trained officer, corroborated by an

independent eyewitness, provided proof beyond a reasonable doubt even without the trial judge

taking into consideration the results of the HGN test.

### III. Defense Counsel Provided Effective Assistance

The defendant further argues that his trial counsel's failure to request a *Frye* hearing and failure to challenge the foundation for the HGN evidence constituted ineffective assistance of counsel. A defendant has the constitutional right to effective assistance of counsel. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, §8. *Strickland v. Washington*, 466 U.S. 668, 687-89, 80 L. Ed. 2d 674, 693-95, 104 S. Ct. 2052, 2064-65 (1984); *People v. Gaines*, 105 Ill. 2d 79, 86 (1984).

In determining whether a defendant was denied effective assistance of counsel, we apply the two-prong test set forth in *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064, and adopted by the Illinois Supreme Court in *People v. Albanese*, 104 Ill. 2d 504 (1984). First, defendant must show that counsel's representation fell below a reasonable standard, effectively denying him the sixth amendment right to counsel guaranteed in the United States Constitution. *Strickland*, 466 U.S. at 687-88, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064. Second, defendant must establish that the ineffective representation resulted in prejudice. *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064. Both prongs of the *Strickland* test must be satisfied to establish ineffective assistance of counsel. *Albanese*, 104 Ill. 2d at 525-27.

Defense counsel's performance is deficient if it fails to satisfy an objective standard of reasonableness. *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064. To prove the first prong of the *Strickland* test, the defendant must show that the record demonstrates that his attorney did not provide effective assistance based on prevailing professional norms. *People v. Caballero*, 126 Ill. 2d 248, 259 (1989). Defendant must overcome the "strong presumption that the challenged action or lack of action might be the product of ' "sound trial strategy." '

1-06-1663

[Citation.]" *Caballero*, 126 Ill. 2d at 260. The reviewing court must remember to give great deference to the performance of counsel and not to second-guess a particular decision or omission. *Strickland*, 466 U.S. at 690, 80 L. Ed. 2d at 695, 104 S. Ct. at 2066. Such deference to counsel's conduct should be given within the context of trial and without the benefit of hindsight. *King*, 316 Ill. App. 3d at 913, citing *Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694, 104 S. Ct. at 2065. Competence of counsel determinations are to be made from a consideration of the totality of counsel's conduct, not from isolated incidents. *People v. Morris* II, 335 Ill. App. 3d 70, 76 (2002). A reviewing court will also " 'not extend its inquiry into areas involving the exercise of judgment, discretion, trial tactics or strategy.' [Citation.]" *People v. Jones*, 302 Ill. App. 3d 892, 898 (1998). The Illinois Supreme Court has stated that decisions regarding " 'what matters to object to and when to object' " are matters of trial strategy. *People v. Perry*, 224 Ill. 2d 312, 344 (2007), quoting *People v. Pecoraro*, 175 Ill. 2d 294, 327 (1997).

In the instant case, the question is whether defense counsel's failure to request a *Frye* hearing or to object to the HGN test being admitted into evidence demonstrates ineffective assistance of counsel because it fails to satisfy an objective standard of reasonableness. A defendant is entitled to competent, not perfect, representation. *People v. Odle*, 151 Ill. 2d 168, 173 (1992). When looking at the totality of the circumstances, the record reflects trial counsel provided defendant effective assistance. The defendant must overcome the strong presumption that he had effective counsel, which the defendant has not done. Deciding not to object to the admission of the HGN test results is a matter of trial strategy, and it is not for this court to second-guess that tactical move. Also, at the point in time when the trial took place there were

18

conflicting decisions as to the need for a *Frye* hearing before admitting the results of an HGN test. Moreover, defense counsel did not have the benefit of the *McKown* opinion, which postdated the trial of the instant case and resolved this conflict.

Finally, defendant does not meet the second prong of the *Strickland* test by demonstrating prejudice. A defendant is prejudiced if there is a reasonable probability that the outcome of the trial would have been different or that the result of the proceeding was unreliable or fundamentally unfair. *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064; *People v. Evans*, 209 Ill. 2d 194, 220 (2004). Such a reasonable probability "is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2069. Where a defendant fails to satisfy *Strickland*'s second prong by failing to show prejudice, the reviewing court need not determine whether *Strickland*'s first prong of deficient performance has been met. *People v. Grant*, 339 Ill. App. 3d 792, 799 (2003). The failure to satisfy either prong of the *Strickland* test precludes a finding of ineffective assistance of counsel. *Strickland*, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069.

The defendant did not suffer prejudice from the alleged error made by his counsel by not requesting a *Frye* hearing or not objecting to the admission of the HGN test results. As explained earlier in this opinion, the State had produced enough evidence even without the HGN test results to convict defendant of driving under the influence. A court may rely on the observations of a trained police officer in making a judgment about the intoxication level of a defendant. Such evidence in the instant case was further corroborated by an independent eyewitness. Moreover, the circuit court never mentioned the HGN test in its findings. The officer's testimony, together

with Mr. DeClet's testimony, was more than sufficient to prove beyond a reasonable doubt that the defendant was guilty of aggravated driving under the influence. Therefore, because the court had sufficient evidence to prove guilt beyond a reasonable doubt without the HGN test results even being considered, defendant fails to demonstrate that the outcome of his trial would have been different if counsel had not made the alleged error. Moreover, the record does not reflect the result of the trial was unreliable or fundamentally unfair. For the reasons previously discussed, defendant has not satisfied either prong of the *Strickland* test.

We further conclude that the erroneous admission of the HGN test results was harmless beyond a reasonable doubt. The competent evidence in the record proves defendant guilty beyond a reasonable doubt and retrial without the erroneous admission of the HGN evidence would produce no different result. *People v. Arna*, 131 Ill. 2d 115, 124 (1989) (erroneous admission of evidence is harmless error when competent evidence establishes guilt beyond a reasonable doubt and retrial without the improperly admitted evidence would produce no different result).

## IV. Fines

Defendant argues he is entitled to a credit of $1,755 toward various fines imposed. He was assessed a $1,000 DUI fine under section 5-9-1(a)(2) of the Unified Code of Corrections (Code). 730 ILCS 5/5-9-1(a)(2) (West 2004). He was also assessed a $1,000 DUI subsequent offense fine under section 11-501(j) of the Illinois Vehicle Code (625 ILCS 5/11-501(j) (West 2004)) and a $100 fine for the Trauma Fund under section 5-9-1(c-5) of the Code. 730 ILCS 5/5-9-1(c-5) (West 2004). Relying on section 110-14 of the Code of Criminal Procedure of 1963

1-06-1663

(725 ILCS 5/110-14 (West 2004)), he requests a $5-per-day presentence credit for the 351 days he spent in custody prior to sentencing.

Section 110-14(a), credit for incarceration on bailable offense, provides as follows:

> "Any person incarcerated on a bailable offense who does not supply
> bail and against whom a fine is levied on conviction of such offense
> shall be allowed a credit of $5 for each day so incarcerated upon
> application of the defendant. However, in no case shall the amount
> so allowed or credited exceed the amount of the fine." 725 ILCS
> 5/110-14(a) (West 2004).

In *People v. Jones*, 223 Ill. 2d 569 (2006), the Illinois Supreme Court held the Trauma Fund charge and the drug assessment charge are "fines" and accordingly any defendant assessed such fines is entitled to the $5-per-day credit. The DUI charges in the instant case are similar to the drug assessment charge and for the reasons articulated in *Jones* will be considered "fines." Accordingly, defendant is due a credit of $1,755 against his fines and the sentencing order shall be modified to reflect this credit.

V. Mittimus Corrected to Reflect Misdemeanor Conviction

Defendant contends his mittimus should be corrected to reflect his conviction of the Class A misdemeanor charge of fleeing or attempting to elude a police officer, rather than the aggravated felony charge of aggravated fleeing or attempting to elude a police officer. The prosecution has no objection to this correction and the record reflects defendant was in fact convicted of the misdemeanor, not the felony, offense. Accordingly, we order that the mittimus be corrected to reflect a conviction for misdemeanor fleeing or attempting to elude a police

21

officer.

## VI. One-Act, One-Crime Rule

Defendant requests his mittimus be corrected to reflect that the three convictions of felony aggravated DUI have merged because they are all based on the same act of driving under the influence of alcohol. Defendant was charged and convicted of three counts of felony aggravated driving under the influence of alcohol. The judgment order reflects all three convictions. We are mindful that the one-act, one-crime rule prohibits multiple convictions when more than one offense is based on the same physical act. *People v. Crespo*, 203 Ill. 2d 335 (2001); *People v. King*, 66 Ill. 2d 551, 566 (1977). All three of defendant's convictions are based on the same underlying act of driving under the influence of alcohol, and accordingly, counts III and IV should merge with count II. We order the mittimus corrected to reflect a single conviction on count II and counts III and IV merge with count II.

## CONCLUSION

For the reasons previously discussed, the State proved defendant guilty beyond a reasonable doubt and the erroneous admission of the HGN test results was harmless error. Defendant's sentencing order should be corrected to reflect a credit of $1,755 toward his fines. The mittimus should be corrected to reflect a conviction for misdemeanor fleeing or attempting to elude the police and further corrected to reflect a single conviction on count II with counts III and IV merging into count II.

Affirmed, mittimus corrected.

FITZGERALD SMITH, P.J., and GALLAGHER, J., concur.

1-06-1663