2023 IL App (2d) 210517-U
No. 2-21-0517
Order filed December 12, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 20-DT-1206 |
| JULIA T. RUPAR, | ) ) | Honorable Michael W. Reidy, |
| Defendant-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE McLAREN delivered the judgment of the court.
Justice Hutchinson concurred in the judgment.
Justice Jorgensen specially concurred.

**ORDER**

¶ 1     *Held*: The defendant's conviction is affirmed where the evidence established beyond a reasonable doubt that she was driving under the influence of alcohol; the prosecutor's comment during closing argument that the defendant's BAC was falling at the time of the breathalyzer test was not improper and therefore, the defendant failed to establish plain error or ineffective assistance of counsel. Trial court is affirmed.

¶ 2     Following a bench trial, defendant Julia A. Rupar was convicted of driving under the influence of alcohol (DUI) (625 ILCS 5/11-501(a)(2) (West 2020)), improper lane usage (*id.* § 11-709(a)), crossing the designated median (*id.* § 11-708(d)), and violation of drivers' license

restriction (*id.* § 6-113(e)). The trial court sentenced defendant to 24 months' supervision for the DUI and violation of drivers' license restriction convictions. On appeal, defendant argues that (1) the evidence was insufficient to convict her of DUI, (2) the trial court committed plain error by allowing the prosecutor to argue during closing argument that her BAC level was falling at the time of her breathalyzer test, and (3) trial counsel provided ineffective assistance by failing to include the issue in her posttrial motion. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4     We summarize the pertinent facts appearing in the record. Illinois State Trooper Ashley Wilson, the sole witness presented at trial, testified that, prior to the following traffic stop, she had never made a DUI stop or administered any standardized field sobriety tests. However, Wilson had been trained to administer the tests, and learned tips and tricks to tell if someone may be intoxicated.

¶ 5     On July 21, 2020, at about 1:04 a.m., Trooper Wilson was on duty in a marked squad car. Trooper Zajak was present in the squad car to observe Wilson, answer questions, and help her. The car's video-recording system was on and operating. Wilson observed a Toyota travel at a "high rate of speed." The Toyota crossed the gore[1] area at the York Road exit on Interstate Route 290 (I-290), but instead of exiting, the car crossed back over the gore area and merged back onto I-290 eastbound, all without signaling. Wilson "paced" the car for about a quarter mile and noted that

---

[1]"An area between a ramp and the mainline (or between two ramps), generally triangular in shape." Illinois Tollway, Roadway Design Criteria, at 6 (Mar. 2019). https://www. illinoistollway.com/documents/20184/473059/Roadway+Design+Criteria_Mar2019.pdf/a860383 f-87d4-47cf-ab59-4a1793a89e44?version=1.3 (last visited Dec. 11, 2023) [https://perma.cc/9S2S-D42S]

the car was travelling about 90 m.p.h. based on her squad car's speedometer. The posted speed limit was 55 m.p.h. When Wilson was asked whether the speedometer was tested for accuracy during the squad car's monthly maintenance, she replied, "It could be *** I'm not 100 percent sure."

¶ 6 Wilson put her flashing lights on to initiate a stop. Defendant pulled over onto the shoulder "very close to the fog line." Wilson testified that it was not reasonable for defendant to park her car that close to the road when there was more room to park on the shoulder. Wilson approached defendant's car at the passenger window. Defendant partially opened the passenger window. At this time, Wilson did not smell the odor of alcohol. Defendant told Wilson that she did not know why she was being stopped. Defendant also told Wilson that she was driving poorly because she only had one contact lens in. Wilson asked defendant for her insurance card. Defendant struggled to find her insurance card and handed Wilson her registration and then temporary driver's license, telling Wilson it was her insurance card. Defendant showed Wilson a bag containing an unopened bottle of alcohol and said that it was for her dad. Wilson returned to her squad car to run defendant's driver's license to determine whether she was a "clear and valid driver."

¶ 7 When Wilson returned from her squad car, she approached the driver's side of defendant's car. Defendant was smoking a cigarette and there was a strong smell of alcohol from defendant's mouth. When Wilson asked defendant whether she had consumed any alcohol that evening, defendant replied that she had a sip of "Maker's Mark" bourbon. Wilson asked defendant to step out of the car and Wilson noticed that defendant had urinated on herself. Defendant "mentioned" that she had urinated on herself before the stop. When defendant first stepped out of her car she stood "in the lane of traffic." She was "very talkative [and] very agitated."

¶ 8 Wilson had defendant perform the horizontal gaze nystagmus (HGN) test. The test revealed four of six clues indicating consumption of alcohol. Wilson then had defendant perform two field sobriety tests. The first test was the walk-and-turn test. The walk-and-turn test entailed taking nine heel-to-toe steps on an imaginary straight line, turning by pivoting on the left foot and taking several small steps with right foot, and then taking nine heel-to-toe steps back to the starting point. Wilson told defendant to stand with her arms down at her side. Defendant took off her sandals and said that sober or not, the test would be difficult. When Wilson instructed defendant, defendant interrupted "the majority of the time." Defendant did not perform the test properly. She raised her arms too high, stepped off the line, "missed heel to toe," and stopped walking at one point. Defendant displayed seven of eight clues on the walk-and-turn test, indicating impairment. Defendant performed the test on a smooth surface.

¶ 9 Next, defendant attempted to perform the one-leg stand test. The one-leg-stand test entailed standing with one leg raised about six inches off the ground while counting until told to stop. During the test defendant swayed. She scored one of four, which indicated impairment. Wilson opined that defendant was impaired and was under the influence of alcohol. Wilson had observed over 100 people under the influence. She arrested defendant and transported defendant to the Addison police department.

¶ 10 During cross-examination, Wilson testified that, during the walk-and-turn test, although defendant may have partially stepped onto the rumble strip when she made the turn, defendant did not do the test on the rumble strip. Wilson agreed with defense counsel that it was possible that the test may have been compromised. The test is supposed to be done on a smooth, level, and flat surface. At the conclusion of the one-leg stand test, defendant displayed one clue of four, which did not indicate anything. Before administering the field sobriety tests, Wilson did not ask

defendant if she had any medical conditions or previous injuries that would affect her ability to perform the tests. This was Trooper Wilson's first DUI arrest.

¶ 11 Wilson's vehicle was equipped with a video camera that recorded the incident. The recording was admitted into evidence and portions were played at trial.

¶ 12 During redirect examination, Wilson paraphrased defendant as saying, "[I] should have drank [*sic*] more so that a DUI was at least worth it." When the prosecutor asked if defendant submitted to a breathalyzer test, defense counsel objected, stating that it was "outside the scope." The prosecutor told the court that she had mistakenly believed that another trooper was going to testify regarding the results of the breathalyzer test. The trial court permitted the State to re-open its proofs and would permit defendant cross-examination regarding the issue.

¶ 13 Wilson testified that at the police station they observed defendant for 20 minutes to be sure that she did not drink or vomit or do anything that would "get in the way of the [breathalyzer] test**."** The breathalyzer machine had been tested for accuracy. Wilson had been trained to administer the test. At 2:27 a.m., Wilson gave defendant a breathalyzer test that registered a blood alcohol concentration (BAC) of 0.073. The trial court had granted the State's motion *in limine* regarding the test result and admitted the printed test result into evidence. Defendant made a "blanket" objection.

¶ 14 The State rested. The trial court denied defendant's motion for a directed finding except for the speeding charge, based in part on Wilson's equivocal testimony regarding whether the speedometer had been tested for accuracy. Defendant presented no evidence.

¶ 15 During closing argument defense counsel argued, "the State even proffered or got the evidence there was a [0].073. Under law that is not someone under the influence of alcohol. Yes, I understand it's charged as an (a)(2), but there is a [0].073."

¶ 16    During rebuttal, the prosecutor argued,

> "First, counsel makes light of the fact that her BAC was [0].073 and states that that means she is not under the influence. That is not what the law says. There is case law that says if you are a [0].05, there is an inference that you are not impaired. The reason we have an (a)(2) charge is for instances where you are driving impaired even if you are not a [0].08 or above.

> I would further state *that your blood alcohol concentration, as we are all well aware, decreases as time goes by*." (Emphasis added.)

The trial court overruled defense counsel's objection that the prosecutor argued "extrapolation."

¶ 17    The trial court found defendant guilty of driving under the influence of alcohol (DUI) (625 ILCS 5/11-501(a)(2) (West 2020)), improper lane usage (*id.* § 11-709(a)), crossing the designated median (*id.* § 11-708(d)), and violation of driver's license restriction (failure to wear both corrective contact lenses) (*id.* § 6-113(e)). Regarding the DUI conviction the trial court considered that "the defendant's driving was terrible," that it was obvious from the video that she was "exceeding the speed limit," crossed over the gore line, and "was weaving throughout her lane." When defendant pulled over, she did not park in a safe manner. Wilson smelled an odor of alcohol emanating from defendant and, although defendant told Wilson that she took a "sip" of Maker's Mark bourbon, her BAC of 0.073 contradicted that statement. Regarding the one and one-half hour delay between the traffic stop and the breathalyzer test, the trial court stated that it "can take the time difference into consideration." The trial court also considered defendant's demeanor, which the court described as "extremely odd but more so agitated." The court noted that defendant failed to follow instructions and failed to do the tests correctly. Further, during one of the tests, defendant almost walked into traffic. The court also noted that defendant urinated on herself.

¶ 18    On August 10, 2021, defendant filed a motion to reconsider arguing that the State failed to prove defendant guilty beyond a reasonable doubt of DUI. The trial court denied defendant's motion to reconsider. On September 3, 2021, the trial court sentenced defendant to two years' supervision on the DUI conviction. On September 7, 2021, defendant timely filed her notice of appeal.

¶ 19                                II. ANALYSIS

¶ 20    As a threshold matter, we note that defendant's sentence of 24-months' supervision has now passed. Our supreme court has consistently found that where the offense of which the defendant is found guilty may be considered in future proceedings or sentencing as an enhancement or aggravating factor, then there is an interest in being able to challenge that finding of guilt. See, *e.g.*, *People v. Sheehan*, 168 Ill. 2d 298 (1995) (finding of guilt of DUI); *People v. Johnson*, 128 Ill. 2d 253 (1989) (order of supervision may be used as evidence in aggravation in sentencing for future conviction). Therefore, defendant's appeal is not moot.

¶ 21                        A. Sufficiency of the Evidence

¶ 22    Defendant argues that the State failed to prove, beyond a reasonable doubt, that she was guilty of DUI. She contends that her conviction rests on next to no evidence that she was impaired, other than improperly administered field sobriety tests. Defendant contends that poor driving and the fact that she "had something to drink that evening" was not enough evidence to prove that she was under the influence of alcohol or that she was impaired.

¶ 23    When reviewing a challenge to the sufficiency of the evidence, we ask whether, when viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the offense beyond a reasonable doubt. *People v. Conway*, 2023 IL 127670, ¶ 16. All reasonable inferences must be allowed in favor of the State. *People v. Lloyd*,

2013 IL 113510, ¶ 42. "[T]he trier of fact is not required to disregard inferences that flow normally from the evidence and to search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt." *People v. Galarza*, 2023 IL 127678, ¶ 25. We will not retry the defendant or substitute our judgment for that of the trier of fact on questions involving the weight of the evidence or the credibility of witnesses. *Conway*, 2023 IL 127670, ¶ 16. Further, we will not overturn a criminal conviction "unless the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of the defendant's guilt." *Id.*

¶ 24 To convict defendant of DUI, as charged here, the State had to prove that defendant, while in "actual physical control" of a car, was "under the influence of alcohol." 625 ILCS 5/11-501(a)(2) (West 2020). Defendant does not dispute she was in "actual physical control" of a car; thus, the only issue concerns whether she was "under the influence of alcohol." *Id.*

¶ 25 A driver is under the influence of alcohol when, as a result of drinking any amount of alcohol, a person's mental or physical faculties are so impaired as to reduce her ability to think and act with ordinary care or renders her incapable of driving safely. *People v. Olvera*, 2023 IL App (1st) 210875, ¶ 25. See also *People v. Gordon*, 378 Ill. App. 3d 626, 631-32 (2007). The State need not present chemical evidence of intoxication in the form of a breathalyzer or blood test to obtain a conviction; rather, the credible testimony of the arresting officer may be sufficient to prove the offense. *People v. Janik*, 127 Ill. 2d 390, 402 (1989). Additionally, a trial court may find a defendant guilty of driving under the influence of alcohol based on circumstantial evidence. *Olvera*, 2023 IL App (1st) 210875, ¶ 39. Circumstantial evidence is proof of certain facts and circumstances from which the fact finder may infer other connected facts that usually and reasonably follow from common experience. *People v. Castino*, 2019 IL App (2d) 170298, ¶ 19.

¶ 26    We hold that the evidence supported the trial court's finding that defendant was under the influence of alcohol. The evidence established that defendant drove in a dangerous and erratic manner. Trooper Wilson observed defendant travelling at an excessive speed on I-290, where she crossed the gore area in an attempt to exit at York Road, then crossed back over the gore area, and then moved back into traffic, all without signaling. The trial court was entitled to consider defendant's erratic driving as evidence that defendant was under the influence of alcohol. See *Gordon*, 378 Ill. App. 3d at 632 (citing the defendant's erratic driving as one factor that supported upholding the defendant's conviction of aggravated DUI).

¶ 27    Further, defendant admitted to Wilson that she had been drinking, and a breathalyzer test taken approximately one and one-half hours after the traffic stop confirmed this. Although scientific proof of intoxication was not necessary to sustain defendant's conviction for DUI (*Gordon*, 378 Ill. App. 3d at 632), defendant's BAC of .073 does not mean that she was not under the influence of alcohol at the time of the accident. Section 11-501.2(b)(2) of the Illinois Vehicle Code (625 ILCS 5/11-501.2(b)(2) (West 2020)) provided that a BAC above 0.05 but below the legal limit of 0.08, "shall not give rise to *any presumption* that the person was or was not under the influence of alcohol, but such fact may be considered with other competent evidence in determining whether the person was under the influence of alcohol." (Emphasis added.) *Id.* See also *People v. Phillips*, 2015 IL App (1st) 131147, ¶ 21 ("[A] blood-alcohol concentration below the legal limit, but above 0.05, only eliminates the presumption of impairment, and nothing more."). Defendant told Wilson that she had "a sip" of Maker's Mark bourbon. Nevertheless, defendant's acknowledgement that she was drinking was consistent with Wilson's testimony that she noticed a strong odor of alcohol coming from defendant's mouth.

¶ 28    Defendant also failed the HGN test. According to Trooper Wilson, she scored a four, a strong indication of being under the influence. See *Gordon*, 378 Ill. App. 3d 630 (a score of four or more is considered failing). A failed HGN test is relevant to impairment in the same manner as the smell of alcohol on a person's breath. *People v. McKown*, 236 Ill. 2d 278, 302 (2010). In addition, defendant failed the walk-and-turn test, displaying seven of eight clues. Defendant spun instead of turning with small steps as instructed, missed heel to toe, and stopped the test before she completed it. Defendant's consistent failure to properly follow the instructions on the walk-and-turn test was additional evidence that she was under the influence. See *People v. King*, 2014 IL App (2d) 130461, ¶ 12 (a motorist's failure to follow an officer's instructions during a traffic stop is relevant to the question of whether the motorist was impaired). See also *People v. Tatera*, 2018 IL App (2d) 160207, ¶ 28 (the fact that the defendant "was unable to comprehend and follow [the officer's] instructions" for sobriety tests supported a finding of impairment). Further, defendant interrupted Wilson, seemed agitated, and urinated on herself. In the light most favorable to the State, these could all be indicators that defendant was under the influence of alcohol. The evidence, when considered collectively, was sufficient to prove defendant guilty of DUI beyond a reasonable doubt.

¶ 29    Defendant notes that Wilson did not smell alcohol on defendant when she first approached her car. However, defendant ignores that Wilson's first encounter with defendant was through a partially opened passenger's window. Subsequently, Wilson approached defendant on the driver's side of the car and defendant exited. At that time, Wilson was in close proximity to defendant and detected a strong smell of alcohol emanating from defendant's mouth, despite the fact that defendant was smoking a cigarette.

¶ 30    Defendant also notes that the HGN test only indicated consumption and not impairment or intoxication. She also notes that her speech was not slurred, and she did not stumble or fall. She further contends that the one-leg test did not indicate impairment, and although she failed the walk-and-turn test, it was not administered properly. Defendant's arguments are unconvincing. Although defendant did not fall and her speech was comprehensible, these facts do not negate the State's evidence against her, nor do these facts show that defendant was "sober enough to exercise 'ordinary care' as a driver." *Olvera*, 2023 IL App (1st) 210875, ¶ 42 (quoting *Gordon*, 375 Ill. App. 3d at 631). "Defendant holds [herself] to a dangerously low standard." *Id.*

¶ 31    Defendant argues that the one-leg stand and walk-and-turn tests were not done in accordance with National Highway Transportation Safety Administration guidelines because Wilson failed to ask her whether she had any impairments that could affect her performance on the tests. Defendant also asserts that the walk-and-turn test was done, partly, on a rumble strip, on uneven ground, without shoes, and with only one contact lens. For these reasons, defendant urges us to disregard the one-leg and walk-and-turn test results.

¶ 32    Defendant contends that this case is similar to *People v. Day*, 2016 IL App (3d) 150852, where the court, after discounting field sobriety tests that were improperly administered in the rain and on wet pavement, held that the remaining evidence was insufficient to provide probable cause to arrest the defendant for DUI. Without the field sobriety tests, the remaining evidence in *Day* was that defendant admitted to drinking earlier in the evening, an odor of alcohol emanated from his mouth, his eyes were glassy and bloodshot, and his speech was slurred. The defendant in *Day* exhibited driving that "had been nothing short of perfect" and "was able to communicate clearly and effectively" with the officer. *Day*, 2016 IL App (3d) 150852, ¶ 37. In contrast, here, defendant's driving was far from perfect, and she was unable to communicate well. Defendant

drove dangerously and erratically; she also failed to follow Trooper Wilson's instructions and repeatedly interrupted her. Therefore, this case is distinguishable from *Day*. Further, whatever merit defendant's contentions may have, they can only carry her so far. There was ample evidence of her impairment, aside from the fact that she failed the walk-and-turn test, and she cannot explain all that evidence away.

¶ 33 Defendant also contends that her BAC at the time of the breathalyzer test was not probative of her intoxication at the time of the traffic stop because of the lengthy delay and the State's failure to provide any evidence scientifically tying the BAC result to her BAC level at the time of the traffic stop.

¶ 34 Defendant failed to raise this issue in her posttrial motion. Therefore, it is forfeited. See *People v. Hutt*, 2023 IL 128170, ¶ 27 (the defendant forfeited his claim that the trial court denied him his fundamental right to a jury trial because he failed to raise the issue in a posttrial motion).

¶ 35 Forfeiture aside, to secure a conviction of section 501(a)(2) of the Code, the State was required to prove that defendant was under the influence of alcohol while driving. 625 ILCS 5/11-501(a)(2) (West 2020). Defendant's BAC was relevant to the issue of whether she was under the influence of alcohol and the trial court was permitted to consider it with the other competent evidence in determining whether she was under the influence of alcohol. See *id.* § 11-501.2(b)(2).

¶ 36 Further, contrary to defendant's contention, her BAC based on a test taken approximately one and one-half hours after the traffic stop was admissible without extrapolation evidence. See *People v. Epstein*, 2022 IL 127824, ¶¶ 23, 28-29 (evidence that the defendant's BAC was 0.107 based on a test of blood drawn approximately four hours after a traffic stop was admissible without retrograde extrapolation evidence; even though the defendant's conduct in police videos led her expert to opine that she was still absorbing alcohol after the stop, the jury was entitled to reject

that opinion, in which case the test result could be used to establish that her BAC while driving was over the legal limit.).

¶ 37    Further, Illinois law is well settled that matters of delay between driving and BAC testing go to the weight of the evidence and must be viewed in light of the surrounding circumstances. *Epstein*, 2022 IL 127824, ¶ 25. See *People v. Schuld*, 175 Ill. App. 3d 272, 279 (1988) (one hour after driving); *People v. Borst*, 162 Ill. App. 3d 830, 836 (1987) (one and one-half hours after the incident); *People v. Frantz*, 150 Ill. App. 3d 296, 302 (1986) (results of tests administered two hours after the incident); and *Kappas*, 120 Ill. App. 3d at 128 (38 minutes after driving). Here the delay between the traffic stop and the breathalyzer test was approximately one and one-half hours. Contrary to defendant's contention, the State was not required to provide scientific evidence tying the BAC result to her BAC level at the time of the traffic stop. *Epstein*, 2022 IL 127824, ¶ 25. Therefore, even if defendant had preserved this issue for review, we determine that no error occurred.

¶ 38                      B. Prosecutor's Closing Argument

¶ 39    Defendant argues that the trial court erred in allowing the prosecutor to argue that defendant's BAC was falling at the time of the breathalyzer test, because no evidence was presented to support this argument. Defendant argues that the prosecutor's incorrect and improper argument colored the trial court's interpretation of the evidence. Before this court, defendant seeks a new trial.

¶ 40    During the State's rebuttal closing argument the prosecutor stated, "your blood alcohol concentration, as we are all aware, decreases as time goes by."

¶ 41    Defendant acknowledges that, although she objected to the comment, she failed to raise this issue in her posttrial motion and, therefore, she failed to preserve this issue for appellate

review. See *People v. Enoch*, 122 Ill. 2d 176, 188 (1988) (to preserve an issue for appellate review, a defendant must object both at trial and in a posttrial motion). Recognizing the procedural default, defendant seeks review by invoking the plain-error doctrine of Illinois Supreme Court Rule 615(a) (eff. Jan. 1, 1967). The doctrine is a narrow and limited exception to the general rule of procedural default. *People v. Jackson*, 2020 IL 124112, ¶ 81. We "will consider unpreserved error when a clear or obvious error occurs and (1) the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error or (2) the error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *Id.* In addressing a defendant's assertion of plain error, we must first determine whether error occurred at all (*id.*) because "without error, there can be no plain error" (*People v. Hood*, 2016 IL 118581, ¶ 18).

¶ 42    The standard of review applied to a prosecutor's closing argument is similar to the standard used to decide whether a prosecutor committed plain error. *Id.* ¶ 83 We will find reversible error only if the defendant demonstrates that the remarks were improper and that they were so prejudicial that real justice was denied or that the finding of guilt resulted from the error. *Id.*

¶ 43    Defendant argues that the prosecutor's improper remark was so prejudicial as to deny him a fair trial. Defendant argues that the evidence was closely balanced, and defendant was denied a fair trial because the trial court considered the prosecutor's improper comment.

¶ 44    Generally, prosecutors are given wide latitude in making closing arguments. *Jackson*, 2020 IL 124112, ¶ 82. This includes making comments on evidence and any fair and reasonable inference the evidence may yield. *Id.* This also includes making inferences that reflect negatively on the defendant. *Id.* Courts of review look at the State's argument as a whole instead of focusing on specific remarks. *Id.*

¶ 45    Here, we determine that the prosecutor's remark was not improper. Rather, the prosecutor's comment that a person's "blood alcohol concentration *** decreases as time goes by" was a fair and reasonable inference based on the evidence. Defendant was observed from the time of the traffic stop until the breathalyzer test. During that time, she did not consume any alcohol or vomit. Additionally, she told Wilson that she had a "sip" of Maker's Mark bourbon prior to the stop. No evidence was presented that defendant was still in the absorption phase after one and one-half hours. Therefore, the prosecutor properly argued that the trial court could reasonably infer that defendant's BAC, when stopped, was as high or higher than her BAC when she took the breathalyzer test. Contrary to defendant's contention, evidence of retrograde extrapolation was not necessary. *People v. Carlson*, 2023 IL (2d) 210782, ¶ 14 ("Although the rate of absorption (and hence the length of the absorption phase) can vary depending on many factors [citation] it is reasonable to infer that, within three hours after his last drink, defendant would have fully absorbed the alcohol he had consumed, and his BAC would no longer be rising. [Citation.] [T]he trial court could reasonably infer that defendant's BAC, when stopped, was as high or higher than his BAC when his blood was drawn."). Accordingly, the prosecutor's remark was not improper, and no error occurred.

¶ 46                          C. Ineffective Assistance of Counsel

¶ 47    Defendant alternatively contends that she was denied the effective assistance of counsel when her trial counsel failed to preserve this issue for review. To demonstrate ineffective assistance of counsel, a defendant must show that (1) the attorney's performance fell below an objective standard of reasonableness and (2) the attorney's deficient performance prejudiced the defendant in that, absent counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687

(1984). Because the defendant must satisfy both prongs of this test, the failure to establish either is fatal to the claim. *Id*. at 697.

¶ 48   Here, we dispose of defendant's assertion of ineffective assistance of counsel on the prejudice prong alone. "The showing of *Strickland* prejudice in this context is similar to the prejudice that establishes reversible error for improper prosecutorial remarks: whether the guilty [finding] resulted from trial counsel's failure to object." *Jackson*, 2020 IL 124112, ¶ 91. We have concluded that the challenged remark was not improper. Because, we found no error in the court's actions, defendant is unable to establish that she was prejudiced by trial counsel's failure to preserve the issue by including it in a posttrial motion. See *People v. Glasper*, 234 Ill. 2d 173, 216 (2009) (holding that the defendant could not demonstrate the prejudice prong of the *Strickland* test where there was no plain error). Therefore, trial counsel's failure to raise the issue in a posttrial motion cannot have caused the type of prejudice that *Strickland* requires. See *Jackson*, 2020 IL 124112, ¶ 91 (because the prosecutor's remarks during closing argument did not constitute plain error, trial counsel's failure to object did not cause the type of prejudice required by *Strickland*).

¶ 49                                    III. CONCLUSION

¶ 50   For the reasons stated, we affirm the judgment of the circuit court of Du Page County.

¶ 51   Affirmed.

¶ 52   JUSTICE JORGENSEN, specially concurring:

¶ 53   While I concur with the majority's decision finding that a new trial is not warranted based on the prosecutor's rebuttal closing remarks, I write separately because I believe these comments were not so prejudicial that real justice was denied or that the finding of guilt resulted in error.

¶ 54   On appeal, defendant calls into question prosecutor's rebuttal closing remarks that, "your blood alcohol concentration, as we are all aware, decreases as time goes by." The majority finds

that this comment was not improper because there was no evidence that defendant was still in the absorption phase and because the court could reasonably infer that defendant's BAC was similar to, if not higher than, when defendant took the breathalyzer test.

¶ 55    I do not believe the cases cited by the majority support the prosecutor's remarks about extrapolation. However, assuming the prosecutor's statements here were improper, I believe that the trooper's testimony and the dash cam footage provide overwhelming evidence of guilt. As such, I would affirm on the alternative basis that the prosecutor's comments were not prejudicial.