2021 IL App (2d) 200002-U
No. 2-20-0002
Order filed August 30, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 18-CF-2311 |
| ONECIMO VAZQUEZ-VELAZQUEZ, | ) ) ) | Honorable Liam C. Brennan, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Justices McLaren and Hudson concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's conviction of aggravated driving under the influence of alcohol was affirmed where (1) the evidence proved his guilt beyond a reasonable doubt, (2) the trial court did not engage in an improper "retrograde extrapolation" analysis, and (3) the evidence was not closely balanced, so defendant could not invoke first-prong plain error in support of his argument that the court improperly admitted the results of a blood test.

¶ 2    Following a bench trial in the circuit court of Du Page County, defendant, Onecimo

Vazquez-Velazquez, was convicted of aggravated driving under the influence of alcohol (DUI)

(625 ILCS 5/11-501(a)(2), (d)(1)(f) (West 2018)) and two counts of reckless homicide (720 ILCS

5/9-3(a) (West 2018)). Defendant was sentenced to 40 months' imprisonment for aggravated DUI, with the other counts merging for sentencing purposes. Defendant appeals, and we affirm.

¶ 3                                                        I. BACKGROUND

¶ 4        Defendant was involved in a single-vehicle accident that killed the only passenger in his car, Annajeanne Dewey. The State charged defendant with aggravated DUI, reckless homicide, and attempting to leave the scene of an accident involving a death (625 ILCS 5/11-401(a) (West 2018)). Defendant filed a motion *in limine* seeking to prevent the State from presenting evidence or argument regarding the "retrograde extrapolation" of defendant's blood alcohol concentration (BAC), given that the State had not disclosed an expert on that subject. See *People v. Floyd*, 2014 IL App (2d) 120507, ¶ 1 ("Retrograde extrapolation is premised on the theory that a person's BAC, derived from a breath or blood test at a particular time, can be extrapolated back to an allegedly higher BAC that existed at the time of a prior incident."). The court granted this motion without objection. The evidence at trial showed the following.

¶ 5        Around 1 a.m. on October 7, 2018, defendant drove his 2005 Chevrolet Cobalt northbound on Fairview Avenue in Downers Grove near the intersection with 55th Street. This was a residential neighborhood. The road narrowed in this area from two lanes in each direction to one lane in each direction. From the pictures admitted into evidence, it appears that there was a solid yellow line marker indicating that this was a no-passing zone. The speed limit was 30 miles per hour. Defendant passed a car ahead of him by driving into a lane for southbound traffic. As he did so, defendant's rear-driver's-side tire hit the curb on the west side of the street. Defendant's car then fishtailed across the street, jumped a parkway on the east side of the street, and hit a tree. At that point, the car split in half diagonally from the right front to the left rear, and Dewey was

ejected from the car. The front portion of defendant's car kept going and hit a second tree before coming to a stop. The rear portion of defendant's car flew 10 feet in the air and landed in the street.

¶ 6    The person whose car defendant passed did not stop after the accident. Ryan Reigle, however, witnessed the accident from "[a] couple hundred yards" away. He called 911 and approached the scene. Reigle testified that he found defendant unconscious in the driver's seat, "sitting there just kind of like in a daze." Defendant eventually got out of his car, stumbling and staggering, and left the area on foot. On the 911 call, Reigle advised the dispatcher that he could not discern whether defendant was intoxicated but that defendant was "bleeding severely." At trial, Reigle estimated that defendant was driving 70 miles per hour when his car hit the first tree. Reigle never saw defendant's car slow down or brake before hitting that tree.

¶ 7    Dewey was dead when police officers and paramedics arrived. Defendant walked back to the scene of the accident, shoeless and wrapped in a blanket. He had blood on his face and road rash on his arms. Officer Nicholas Linklater of the Downers Grove Police Department briefly interviewed defendant at the scene. That interview was recorded and admitted into evidence. During that discussion, defendant falsely claimed that there had been four people in the car and that he was not the driver of the car. Linklater testified that defendant had "bloodshot and glassy eyes" and a "moderate odor of alcoholic beverage upon his breath." Linklater also believed that, based on defendant's answers to questions, defendant had "some problems with information processing and short-term memory." Linklater saw that defendant "appeared to be staggering when he was walking," but Linklater did not know whether this was due to injury or intoxication. Linklater did not note defendant having slurred speech.

¶ 8    Defendant was not given field sobriety tests but instead was transported to a hospital by ambulance. A firefighter/paramedic, Dylan Arnold, noticed "a slight odor of alcohol" on

defendant. Defendant was able to provide his birth date to Arnold and answer questions about his medical needs. A blood test taken at the hospital at 1:58 a.m. showed that defendant had a serum concentration of 91 milligrams per deciliter, which equaled a BAC of .077. The record does not indicate what medical treatment defendant received at the hospital, nor was there evidence of the extent of his injuries. Later that morning at the hospital, defendant spoke to Linklater again. This time, defendant admitted that he was the driver of the car involved in the accident. That conversation was not recorded.

¶ 9 Detective Andrew Barczak of the Downers Grove Police Department interviewed defendant for about fifteen minutes on October 8, 2018. That interview was recorded and admitted into evidence. Defendant said that he went to an 11 p.m. movie with Dewey on the night of the accident. He did not drink before they got to the theater, but he and Dewey had wine once they got there. He said that he had three "little" glasses of wine that night. Defendant initially said that he believed that Dewey paid for the wine. When Barczak asked defendant whether Dewey paid for it with cash or a credit card, defendant responded that he was "lying" and that he paid for the wine with his debit card. Defendant explained that Dewey got more wine during the movie, but he denied drinking it. He and Dewey drove home after the movie, and he claimed that he was driving only 40 or 45 miles per hour on Fairview Avenue. According to defendant, immediately before the accident, he hugged Dewey because she was sad. He then saw a car braking ahead of him. He turned his wheel to avoid hitting that car. He attempted to brake but his car slipped and kept going.

¶ 10 On October 10, 2018, Barczak interviewed defendant again for approximately one hour. That interview was recorded and admitted into evidence. Defendant at times relied on the assistance of a Spanish language interpreter. Defendant explained that Dewey got a bottle of wine at the movie theater and that he had "just a little bit" of it because he did not want to drink. Asked

whether he or Dewey paid for the wine, he did not provide a definitive answer. Barczak then showed defendant a copy of the receipt for the wine, which showed that defendant paid for it. At that point, defendant acknowledged that he paid for the wine. Defendant said that he stopped drinking about 30-40 minutes into the movie and that he had three glasses of wine total. Defendant repeatedly told Barczak that he was travelling only 40 or 45 miles per hour before the accident.

¶ 11    Defendant's explanation of how the accident occurred was not entirely consistent throughout the October 10, 2018, interview. For most of the interview, defendant said that, as he was hugging Dewey and kissing her forehead, he saw a car ahead of him braking. He then passed that car to avoid an accident, at which point he lost control. He tried to brake but "it wouldn't brake," and he hit the tree. At the end of the interview, however, defendant seemed to acknowledge that he saw the car in front of him but that he passed it because he did not want to follow it. Defendant did not remember walking away from the scene of the accident, but he remembered returning. Asked why he initially told officers that there were four people in the car and that he was not the driver, he said that he "didn't have his five senses" at the time and that he did not remember saying those things.

¶ 12    One of the State's accident reconstruction experts, Joseph Grage, testified that defendant was traveling at a "high rate of speed" that would have been "[a]t least twice" the speed limit. The State's other accident reconstruction expert, Jonathan Pugsley, conducted an on-scene investigation and analyzed data that was extracted from defendant's car's mechanical systems. According to Pugsley, although the mechanical systems did not record the car's speed, other available data allowed Pugsley to conclude that defendant was driving at least 85 miles per hour at the time of the crash. Pugsley also determined that, four seconds before defendant's car hit the first tree, the accelerator pedal was "pretty much on the floor." By three seconds before the

accident, however, the gas pedal was fully released. Pugsley testified that, although defendant's car did not record information as to when defendant applied the brakes, the anti-lock braking system did not engage until within one second of the car hitting the first tree. Pugsley did not observe any indication at the scene that defendant's car braked before leaving the road. There was no error code recorded in defendant's car's mechanical systems to indicate any mechanical malfunction.

¶ 13    Defendant did not present any evidence.

¶ 14    The court addressed the two reckless homicide counts first. The court made a factual finding that, contrary to defendant's claim that he was driving only 40 or 45 miles per hour, defendant "was driving at or about 85 miles per hour at the time of the accident." Although the court recognized that case law indicates that "speed alone does not constitute recklessness," the court explained that "85 miles an hour on a highway is not the same as 85 miles an hour on a 30-mile-per-hour residential street." In the latter case, a person is likely to encounter slower moving cars, which can "prove dangerous obstacles." The court noted that, on top of defendant's "excessive speeding," defendant admitted to the police that he "took his eyes off the road to hug the decedent, to care for her, to console her." In the court's view, taking one's eyes off the road while driving 85 miles an hour in a 30 mile-per-hour zone is not "distracted driving" but "an incredibly dangerous maneuver."

¶ 15    The court deduced that the car in front of defendant on Fairview Avenue was driving "substantially slower" than defendant's car and that defendant had to take steps to avoid hitting it. Although defendant could have stayed in the two northbound lanes to pass this car, defendant crossed over the two southbound lanes, hit the west curb, and then cut across four lanes of traffic before hitting the east curb and entering the parkway. During all of this, defendant had "a clear

opportunity to hit the brakes." The court found, however, that defendant did not do so. Adding to the riskiness of this behavior was that defendant "had consumed a not insignificant amount of alcohol." For these reasons, the court found defendant guilty of both counts of reckless homicide.

¶ 16    The court then addressed the aggravated DUI charge. The court first rejected defense counsel's insinuation during closing argument that the letter "a" on defendant's toxicology lab report indicated that there was something "abnormal" or problematic with the test itself. The court then said the following about defendant's BAC of .077:

> "There are other problems with the number, though. And one is that this number doesn't occur or the lab isn't taken at the time of the accident. It's an hour later. There's been no testimony, obviously, as it relates to any kind of retrograde analysis or request in that regard. And the Court's certainly not going to even remotely attempt to engage in such a thing. But I think it is fair to say that whatever the Defendant's BAC was at the time of the accident, it wasn't .077. And, obviously—well, I'm just going to leave it at that.
>
> So, we don't know if the Defendant's on the way up, or the Defendant on [*sic*] the way down. And we cannot speculate. But I think it's fair to say the Defendant did not consume alcohol between the time of the accident and the time the lab was taken. And based upon that, it's fair to say that whatever the BAC was at the time of the accident, the Defendant had consumed a significant amount of alcohol. At least three glasses of wine prior to the accident."

¶ 17    The court then identified the relevant question as "whether, as a result of drinking any amount of alcohol, [defendant's] mental or physical faculties are so impaired as to reduce his ability to think and act with ordinary care." The court then employed "the same analysis" as it applied to the reckless homicide counts. Specifically, the court reasoned that defendant drove 85

miles per hour through a residential neighborhood at 1 a.m., knowing that he consumed alcohol, and then decided to "take his eye off the road" to console his girlfriend. In the court's opinion, this behavior was "highly suggestive of mental impairment." The court also noted that defendant did not "slam on the brakes" when he encountered the car in front of him, nor did he remain in the northbound lanes. Regardless of whether the impairment was mental or physical that prevented defendant from applying the brakes, "clearly, the Defendant is not responding in a way that somebody in the right frame of mind would respond."

¶ 18    The court then considered whether defendant's failure to brake was a function of "stupidity," "negligence," or "alcohol impairment." The court noted that defendant had "some level of injury after the accident," as he had blood on him and was taken to the hospital. On the other hand, defendant also was "walking around" and "interacting with the police." The court determined that this was not a case where defendant experienced head trauma and could not remember what happened. Instead, "[w]hat we have here is the Defendant completely fabricating who's in the car and where he was in the car at the time of the accident." In the court's view, that was consciousness of guilt. The court understood that, even if defendant was not under the influence of alcohol, he still might not want to admit that he was the driver, given that he was speeding. Here, however, the court deemed important defendant's "persistent lies" as far as "denying his responsibility as it relates to anything having to do with alcohol." For example, defendant denied purchasing alcohol, even though there was proof that he did. In the court's view, the lying "speaks to this Defendant's belief that he shouldn't have been driving, that he should not have been consuming alcohol."

¶ 19    The court found that, considering the totality of the evidence, defendant's "actions, both mentally and physically, were impaired by his consumption of alcohol." Accordingly, the court found defendant guilty of aggravated DUI.

¶ 20    The court found defendant not guilty of attempting to leave the scene of an accident, as he approached law enforcement officers and "informed them that he was present and in the car."

¶ 21    The court denied defendant's postjudgment motion and sentenced him to 40 months' imprisonment. Defendant timely appealed.

¶ 22                                II. ANALYSIS

¶ 23    Defendant challenges the sufficiency of the evidence supporting his conviction of aggravated DUI. He also argues that the trial court improperly relied on principles of retrograde extrapolation that lacked a basis in the evidence. Finally, defendant maintains that the court erroneously admitted his blood-test results as a business record.

¶ 24                        A. Sufficiency of the Evidence

¶ 25    Defendant first argues that the State failed to prove him guilty of aggravated DUI. According to defendant, the evidence supported a finding of alcohol consumption but not actual impairment. The State responds that the evidence was sufficient to support the trial court's finding that defendant was impaired.

¶ 26    "On a challenge to the sufficiency of the evidence, the relevant question is whether, when viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *People v. Tatera*, 2018 IL App (2d) 160207, ¶ 23. "The trier of fact is responsible for resolving conflicts in the testimony, weighing the evidence, and determining what inferences to draw, and a reviewing court ordinarily will not substitute its judgment on these matters for that of the trier of fact." *People v.*

*Williams*, 2018 IL App (2d) 160683, ¶ 19. We will not set aside a criminal conviction " 'unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt.' " *Williams*, 2018 IL App (2d) 160683, ¶ 19 (quoting *People v. Collins*, 106 Ill. 2d 237, 261 (1985)).

¶ 27    The State charged defendant with aggravated DUI in that he drove or physically controlled a motor vehicle while under the influence of alcohol and got into an accident, which proximately caused Dewey's death (625 ILCS 5/11-501(a)(2), (d)(1)(f) (West 2018)). Defendant challenges the State's evidence that he was under the influence of alcohol when the accident occurred.

¶ 28    " 'A person is under the influence of alcohol when, as a result of drinking any amount of alcohol, his mental or physical faculties are so impaired as to reduce his ability to think and act with ordinary care.' " *People v. Gordon*, 378 Ill. App. 3d 626, 631 (2007) (quoting Illinois Pattern Jury Instructions, Criminal No. 23.29 (4th ed. 2000)). In other words, "[a] defendant is guilty of driving under the influence if the prosecution proves that a driver was under the influence of a drug or alcohol to a degree that rendered him incapable of driving safely." *Gordon*, 378 Ill. App. 3d at 631-32. Significantly, the State need not prove that defendant was "completely incapacitated by alcohol" (*Tatera*, 2018 IL App (2d) 160207, ¶ 29) or even that he exhibited "a high degree of impairment" (*People v. Phillips*, 2015 IL App (1st) 131147, ¶ 20). Additionally, the State may rely on circumstantial evidence to prove its case. *People v. Hires*, 396 Ill. App. 3d 315, 318 (2009). " 'Circumstantial evidence is proof of certain facts and circumstances from which the fact finder may infer other connected facts which usually and reasonably follow from the human experience and is not limited to facts that may reasonably have alternative, innocent explanations.' " *People v. Weathersby*, 383 Ill. App. 3d 226, 229 (2008) (quoting *People v. Diaz*, 377 Ill. App. 3d 339, 345 (2007)).

¶ 29    We hold that the evidence supported the trial court's finding that defendant was under the influence of alcohol at the time of the accident. The evidence showed that defendant was driving approximately 85 miles per hour in a 30 mile-per-hour residential area. While doing so, per defendant's statement to police, he took his eyes off the road to console his girlfriend. When defendant then encountered a slower moving vehicle in his way, he did not slow down or pass on the right as might be expected. Instead, he passed on the left, crossed a no-passing solid yellow line marker in the middle of the road, and entered the lanes for opposing traffic. The trial court was entitled to consider defendant's erratic driving as evidence that defendant was under the influence of alcohol. See *Gordon*, 378 Ill. App. 3d at 632 (citing the defendant's erratic driving as one factor that supported upholding the defendant's conviction of aggravated DUI).

¶ 30    Defendant then hit the west curb of the road, fishtailed back across the road, hit the east curb, and entered the parkway before hitting a tree. There were no marks on the road to suggest that defendant braked before leaving the road. This corroborated Reigle's testimony that he did not see defendant brake or slow down before hitting the tree. Although defendant's car did not record information regarding when defendant employed his brakes, the anti-lock brakes did not engage until within one second of the car hitting the tree. The reasonable inference from the evidence is that defendant exhibited a delayed reaction time when braking, which is an indication that he was under the influence of alcohol. See *People v. Ikerman*, 2012 IL App (5th) 110299, ¶ 51 (among the factors that the court mentioned when rejecting the defendant's argument that the State failed to prove that alcohol was the proximate cause of a fatal car accident was that the evidence showed that a sober driver would have "had time to react and take evasive action").

¶ 31    The evidence also supported the trial court's conclusion that defendant lied to police officers after the accident. He lied when he said that there were four occupants in the car. He lied

when he said that he was not the driver. He lied when he said that he did not know who purchased the alcohol at the movie theater. And he lied when he insisted that he was driving only 40 or 45 miles per hour. Lying to the police is evidence of consciousness of guilt. *People v. Walker*, 2020 IL App (4th) 180774, ¶ 93. Nevertheless, defendant proposes in his reply brief that it is "entirely possible that he lied because he had just been involved in a fatal car accident caused by his non-impaired but still reckless driving." Thus, he argues, although his lies point to consciousness of guilt, "the State failed to establish beyond a reasonable doubt that it was guilt over intoxication rather than reckless driving." Defendant's argument is unpersuasive, as identifying the reason why a defendant exhibited guilty behavior is "a fact question for determination by the trier of fact." *Phillips*, 2015 IL App (1st) 131147, ¶ 22. Here, the trial court reasonably concluded that defendant lied because he consumed alcohol and knew that he should not have been driving.

¶ 32     Defendant ultimately admitted to the police that he had been drinking, and a blood test taken one hour after the accident confirmed this. The fact that defendant had a BAC of .077 approximately one hour after the accident does not mean that he was *not* under the influence of alcohol at the time of the accident. "[A] blood-alcohol concentration below the legal limit, but above 0.05, only eliminates the presumption of impairment, and nothing more." *Phillips*, 2015 IL App (1st) 131147, ¶ 21. Defendant told the police that he drank three glasses of wine. Considering defendant's pattern of lying to police, one might reasonably question whether he underreported his alcohol consumption. It seems that the trial court drew that conclusion, as the court found that defendant had "[a]t least three glasses of wine prior to the accident." Nevertheless, defendant's acknowledgement that he was drinking was consistent with the evidence that he had an odor of alcohol about him, whether slight or moderate. Defendant was also observed stumbling and staggering at the scene, and his eyes were bloodshot and glassy. A responding police officer

thought that defendant had difficulty processing information. In the light most favorable to the State, these could all be indicators that defendant was under the influence of alcohol. The evidence, when considered collectively, supports the trial court's conclusion that defendant was under the influence of alcohol at the time of the accident.

¶ 33    Relying on *People v. Clark*, 123 Ill. App. 2d 41 (1970), defendant contends that his purported signs of impairment (his "bloodshot eyes, balance issues, and confusion") could have been the result of the accident rather than alcohol consumption. In *Clark*, the defendant was involved in a car accident in which his "head crashed through the windshield of his car," knocking him unconscious. *Clark*, 123 Ill. App. 2d at 43. Neither the eyewitnesses nor a responding police officer could wake the defendant. *Clark*, 123 Ill. App. 2d at 43-44. The defendant had to be put on a stretcher before being taken to the hospital, where he was "treated for injuries which required sutures on his chin and on his chest." *Clark*, 123 Ill. App. 2d at 43. The only evidence of the defendant's intoxication was a police officer's testimony that the defendant had a strong odor of alcohol on his breath and that, at the hospital, the defendant (1) was combative and used profanity, (2) had "unsure" walking, and (3) had "thick tongued" speech. *Clark*, 123 Ill. App. 2d at 44. The defendant was convicted of DUI based on this evidence, but the appellate court reversed. According to the court, the behavior that the officer observed did "not rationally support a charge of intoxication," as the defendant's demeanor could have been the result of the injuries that he sustained in the accident. *Clark*, 123 Ill. App. 2d at 45. That left only the evidence regarding the odor of alcohol, which, the court noted, standing alone, was "not sufficient proof" of intoxication." *Clark*, 123 Ill. App. 2d at 44.

¶ 34    *Clark* does not change our assessment of the sufficiency of the evidence. To be sure, defendant was involved in an extremely serious car accident. An eyewitness testified that he

initially found defendant unconscious and dazed, and a responding police officer later observed blood on defendant's face and road rash on his arms. If the only evidence of defendant's intoxication had been testimony about how defendant appeared and smelled immediately after the accident, defendant would have a compelling argument for reversal based on *Clark*. Here, however, unlike in *Clark*, there was additional evidence bearing on defendant's intoxication. As explained above, this included defendant's erratic driving, his delayed reaction time in braking, his lies to police, his acknowledgement that he had been drinking, and a blood test that showed that he was near the legal limit one hour after the accident. Thus, *Clark* is distinguishable.

¶ 35    Defendant notes that Barczak mentioned during his October 10, 2018, interview of defendant that the event might have been traumatic and affected defendant's recollection. Defendant cites no case law indicating that comments made by an interrogating officer while building rapport with a suspect have any evidentiary value. To the extent that defendant is arguing that he provided a false account to the police due to memory loss and trauma from the accident rather than because of a conscious attempt to lie, the trial court found otherwise, and such finding was reasonable in light of the evidence. See *People v. Ethridge*, 243 Ill. App. 3d 446, 467 (1993) ("A reviewing court must not invade the province of the fact finder by hypothesizing other possible explanations for defendant's appearance and behavior."); *People v. Nunes*, 143 Ill. App. 3d 1072, 1076 (1986) (the trier of fact was entitled to reject the defendant's proposed innocuous reasons why she drove the wrong way down the expressway and then exhibited certain physical impairments when she encountered the police).

¶ 36    Defendant further mentions that none of the State's witnesses opined at trial that he was intoxicated or that alcohol impairment caused the accident. Defendant cites no authority indicating that such testimony was required. Moreover, the trial court was aware of this fact, and we will not

substitute our judgment for the court's judgment when it comes to weighing evidence. *People v. Turner*, 2018 IL App (1st) 170204, ¶ 74. Even so, the absence of opinion testimony that defendant was under the influence of alcohol is understandable given the circumstances of this case. Defendant was taken from the scene of the accident to the hospital, so none of the typical field sobriety tests were performed. Additionally, none of the witnesses knew at the time whether defendant's behavior and appearance immediately after the accident was due to injury or intoxication. It was not until the investigation was completed that facts came together collectively supporting a reasonable conclusion that defendant was under the influence of alcohol.

¶ 37 Defendant also speculates that his car might have had some underlying mechanical issue that contributed to his speeding and the accident. This argument is unavailing, as there was no evidence of any vehicle malfunction, and there was testimony that defendant's car's mechanical system did not log a mechanical failure. The State was not required to disprove hypothetical scenarios that had no basis in the evidence. See *People v. Martin*, 2011 IL 109102, ¶ 19 (the court rejected the defendant's argument that the State was required to prove that the substance in his urine was methamphetamine as opposed to some other chemical that broke down into a metabolite of methamphetamine; the court reasoned that defendant's argument was "pure conjecture" and "irrelevant" in the absence of evidence that the defendant used a drug other than methamphetamine).

¶ 38 Defendant also asserts that the trial court was "unsure of" defendant's impairment. Defendant takes the court's comments out of context. The court said that, irrespective of whether defendant's failure to brake was due to a mental impairment or a physical impairment, defendant was "not responding in a way that somebody in the right frame of mind would respond." Defendant also ignores that, later in its ruling, the court concluded that defendant's "actions, both mentally

and physically, were impaired by his consumption of alcohol." The court's comments were consistent with both the evidence and the relevant legal test. See *Hires*, 396 Ill. App. 3d at 318 ("A defendant is under the influence when, as a result of consuming alcohol or any other intoxicating substance, 'his mental or physical faculties are so impaired as to reduce his ability to think and act with ordinary care.' " (quoting *Gordon*, 378 Ill. App. 3d at 631)).

¶ 39                                   B. Retrograde Extrapolation

¶ 40    Defendant next argues that the trial court "improperly relied on it's [*sic*] own *ad hoc* retrograde extrapolation of what [defendant's] BAC may have been to find him guilty of DUI." Although defendant acknowledges that this issue is procedurally forfeited due to its exclusion from his postjudgment motion, he asks us to review the matter for first-prong plain error. The State responds that the court's comments were proper. According to the State, even if the court's comments were improper, the evidence was not closely balanced.

¶ 41    The plain-error doctrine applies in two situations. The first is "when 'a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error.' " *People v. Sebby*, 2017 IL 119445, ¶ 48 (quoting *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007)). The other is "when 'a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *Sebby*, 2017 IL 119445, ¶ 48 (quoting *Piatkowski*, 225 Ill. 2d at 565). Typically, the first step in the analysis is to determine whether a clear or obvious error occurred. *Sebby*, 2017 IL 119445, ¶ 49.

¶ 42    In a bench trial, the court is permitted to consider its "own life and experience in ruling on the evidence." *People v. Thomas*, 377 Ill. App. 3d 950, 963 (2007). At the same time, the court is

limited to the record before it. *People v. Harris*, 57 Ill. 2d 228, 231 (1974). Thus, " '[a] determination made by the trial judge based upon a private investigation by the court or based upon private knowledge of the court, untested by cross-examination, or any of the rules of evidence constitutes a denial of due process of law.' " *People v. Dameron*, 196 Ill. 2d 156, 171-72 (2001) (quoting *People v. Wallenberg*, 24 Ill. 2d 350, 354 (1962)). We assume that the trial court considered only competent evidence, and that assumption is overcome only where "the record affirmatively demonstrates the contrary." *People v. Tye*, 141 Ill. 2d 1, 26 (1990).

¶ 43    For the following reasons, we hold that the record does not show that the court conducted any private investigation. Nor did the court improperly rely on its own private knowledge of matters that were outside the record. Accordingly, there was no due process violation and no plain error.

¶ 44    The trial court explicitly recognized that it received "no testimony *** as it relates to any kind of retrograde analysis." The court also stated that it was "not going to even remotely attempt to engage in" such an analysis. Defendant argues that, despite this promise, "the court went on to engage in exactly such a thing" by, in defendant's words, speculating that he "was likely over the legal limit when the accident occurred." Specifically, defendant takes issue with the following comments that the court made:

"But I think it is fair to say that whatever the Defendant's BAC was at the time of the accident, it wasn't .077. And, obviously—well, I'm just going to leave it at that.

So, we don't know if the Defendant's on the way up, or the Defendant on [*sic*] the way down. And we cannot speculate. But I think it's fair to say the Defendant did not consume alcohol between the time of the accident and the time the lab was taken. And based upon that, it's fair to say that whatever the BAC was at the time of the accident, the

Defendant had consumed a significant amount of alcohol. At least three glasses of wine prior to the accident."

¶ 45    As previously mentioned, "[r]etrograde extrapolation is premised on the theory that a person's BAC, derived from a breath or blood test at a particular time, can be extrapolated back to an allegedly higher BAC that existed at the time of a prior incident." *Floyd*, 2014 IL App (2d) 120507, ¶ 1. Here, the court never purported to identify defendant's BAC at the time of the accident, nor did the court conclude that defendant's BAC ever exceeded .077. Accordingly, the court did not employ retrograde extrapolation.

¶ 46    Each of the above-mentioned comments had a proper basis in the evidence. Given that defendant's blood was not tested until an hour after the accident, the court was justified in believing that this test was not necessarily indicative of defendant's BAC at the time of the accident. Moreover, there was no evidence as to how long it takes from a person's last sip of alcohol for that person's BAC to stop rising. Thus, the court appropriately found that there was no basis in the evidence to determine whether defendant's BAC was higher or lower one hour after the accident than it was at the time of the accident. It was also a reasonable inference from the evidence that defendant did not drink alcohol in the hour between the accident and his blood test, as defendant spent most of that hour speaking with police officers and receiving medical attention. Finally, it was a reasonable inference from the evidence that, irrespective of defendant's BAC, he drank a "significant amount of alcohol" on the night of the accident. By defendant's own admission, he drank three glasses of wine at the movie theater before driving home. We find no error in the court's comments.

¶ 47                              C. Blood-Test Results

¶ 48    Finally, defendant argues that the trial court erred by admitting into evidence the results of his blood test pursuant to section 11-501.4 of the Illinois Vehicle Code (625 ILCS 5/11-501.4 (West 2018)). That statute establishes a business-records hearsay exception applicable in DUI cases. According to defendant, this statute is in "direct conflict" with Illinois Rule of Evidence 803(6) (eff. Sept. 28, 2018), which provides that medical records are not admissible as business records in criminal cases. Thus, defendant reasons, the rule prevails over the statute, and the results of his blood test were inadmissible. Defendant acknowledges that the Illinois Appellate Court has rejected this argument (see *People v. Deroo*, 2020 IL App (3d) 170163, ¶ 44; *People v. Hutchison*, 2013 IL App (1st) 102332, ¶ 24), but he urges us to adopt the reasoning of Justice Holdridge's dissent in *Deroo*. Defendant did not raise this issue at trial, so he asks us to consider his argument pursuant to the first prong of the plain-error doctrine.

¶ 49    In response, the State argues that the holdings of *Deroo* and *Hutchison* are "persuasive." The State also contends that the evidence was not closely balanced.

¶ 50    On September 30, 2020, our supreme court allowed leave to appeal in *Deroo*. The supreme court has not yet issued its decision. Accordingly, we will not address the interplay between section 11-501.4 of the Illinois Vehicle Code and Illinois Rule of Evidence 803(6). We hold that, even if defendant's blood test results were not admissible as business records, the evidence was not closely balanced, so defendant is not entitled to relief pursuant to the plain-error doctrine.

¶ 51    Under the first prong of the plain-error doctrine, "[w]hat makes an error prejudicial is the fact that it occurred in a close case where its impact on the result was potentially dispositive." *Sebby*, 2017 IL 119445, ¶ 68. "In determining whether the evidence adduced at trial was close, a reviewing court must evaluate the totality of the evidence and conduct a qualitative, commonsense assessment of it within the context of the case." *Sebby*, 2017 IL 119445, ¶ 53. This inquiry

"involves an assessment of the evidence on the elements of the charged offense or offenses, along with any evidence regarding the witnesses' credibility." *Sebby*, 2017 IL 119445, ¶ 53. Evidence may be closely balanced even though it was sufficient to prove the defendant guilty beyond a reasonable doubt. See *Sebby*, 2017 IL 119445, ¶ 60 ("The issue before us, however, does not involve the sufficiency of close evidence but rather the closeness of sufficient evidence.").

¶ 52 The only element of aggravated DUI that defendant contests is whether he was under the influence of alcohol at the time of the accident. Even if we disregard the results of defendant's blood test, the evidence overwhelmingly showed that defendant was under the influence of alcohol. Defendant admitted to drinking three glasses of wine at a movie theater before the accident. His manner of driving on the way home was extraordinarily erratic and reckless. While driving approximately 85 miles per hour in a residential neighborhood where the road merged from two lanes in each direction to one lane, defendant attempted to pass another car by entering opposing lanes of traffic. As he was doing so, he was hugging and kissing his girlfriend. This is not the way that one might expect a sober person to drive. Defendant's claim to the police that he was driving only 40 or 45 miles per hour was affirmatively disproved by the data that was retrieved from his car's mechanical systems.

¶ 53 Defendant lost control of his car, hit the west curb, and then fishtailed across the road until it hit the east curb. A person who was not under the influence of alcohol might be expected to hit the brakes at some point in this process. The evidence showed, however, that defendant did not brake before he entered the parkway on the east side of the road. The only reasonable inference is that defendant experienced a delayed reaction time. In his police interviews, defendant vaguely asserted that he tried to brake but was unable to do so. But defendant never specified exactly when he tried to brake. He also never clarified whether he experienced a mechanical malfunction or

whether his car was too out of control to stop by the time he tried to brake. To the extent that defendant was insinuating to the police that he experienced a vehicle malfunction, an accident reconstruction expert found no error codes indicating a malfunction.

¶ 54 Defendant survived a car accident that killed his girlfriend. Although he was dazed and bloody, there was no evidence that he sustained a concussion or any other serious head injury. Defendant left the scene on foot before returning and speaking with officers. He was observed stumbling and staggering, his eyes were bloodshot and glassy, he had a slight or moderate odor of alcohol about him, and one officer thought that defendant had difficulty processing information. Defendant initially provided a false account to the police before admitting that he was the driver of the car. In a subsequent recorded interview, defendant said that he did not know whether he purchased wine at the movie theater. When the officer confronted defendant with a receipt matching defendant's debit card, defendant admitted that he was "lying."

¶ 55 Viewing the evidence collectively and with a common-sense assessment, we cannot say that the evidence was closely balanced. This is not a case, for example, where the various witnesses presented conflicting plausible accounts without corroborating evidence. Contra *Sebby*, 2017 IL 119445, ¶¶ 62-63 (the evidence was closely balanced where it turned on a credibility contest). Instead, the evidence overwhelming showed that defendant was under the influence of alcohol when the accident occurred. Accordingly, defendant is not entitled to relief pursuant to the first prong of the plain-error doctrine.

¶ 56                                     III. CONCLUSION

¶ 57     For the reasons stated, we affirm the judgment of the circuit court of Du Page County.

¶ 58     Affirmed.