2022 IL App (2d) 200734-U
No. 2-20-0734
Order filed March 18, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 18-CF-799 |
| ROBERT W. KIEHN, | ) ) ) | Honorable David P. Kliment, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE JORGENSEN delivered the judgment of the court.
Justices Zenoff and Brennan concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The State proved defendant guilty beyond a reasonable doubt of aggravated driving under the influence.  Further, trial counsel was not ineffective for failing to move to suppress the traffic-stop video.  Finally, we reject defendant's argument that his prosecution was vindictive.  Affirmed.

¶ 2    Following a jury trial, defendant, Robert W. Kiehn, was convicted of two counts of aggravated driving under the influence of alcohol (DUI) (625 ILCS 5/11-501(a)(2), (d)(1)(A), (d)(2)(B) (West 2016)).  On November 6, 2020, the court denied defendant's posttrial motions and sentenced him to felony probation.  Defendant appeals, arguing that the evidence was insufficient

to establish intoxication beyond a reasonable doubt, his counsel was ineffective, and his prosecution was vindictive. For the following reasons, we reject his arguments and affirm.

¶ 3                                    I. BACKGROUND

¶ 4                                    A. Pretrial and Trial

¶ 5     The events giving rise to this action occurred on December 26, 2017. On February 23, 2018, the court held a hearing on defendant's petition to rescind the statutory summary suspension of his license. At that time, the case against defendant was charged as a misdemeanor. In relevant part, defense counsel argued that the video of the events leading up to defendant's arrest did not depict defendant being offered the opportunity to perform field-sobriety tests or a portable breath test. Kevin Lawson, a police officer for the Village of East Dundee, testified that the audio microphone was turned off during the time that he asked defendant to conduct field-sobriety testing. Lawson testified that he offered those tests to defendant during transport to the police station. Defense counsel did not move to suppress the video, nor would counsel later object to the video's admission at trial. The court entered a directed finding in the State's favor.

¶ 6     Around two months later, on April 18, 2018, the State filed a two-count indictment against defendant for aggravated DUI. The felony indictment was based upon the same events that were previously alleged as a misdemeanor.

¶ 7     A jury trial commenced on January 30, 2020. Lawson testified that, on December 26, 2017, at around 12:56 a.m., he was on patrol near River and Jackson Streets in East Dundee. In that area, he noticed that a vehicle was not properly parked in a diagonal parking spot on River Street; rather, the vehicle had pulled through the spot and was resting such that two-thirds of the vehicle was parked over the curb and on top of the parkway. There was snow on the ground, but the curb remained visible. Lawson called for backup and positioned his squad car with the dash

camera recording the parked vehicle from the rear, passenger-side view. Lawson testified that, when he arrived, the vehicle's engine was running.

¶ 8 Lawson approached the vehicle from its passenger side and noticed two persons inside. Defendant's brother, Thomas (Tom) Kiehn, was seated in the front passenger seat and was dancing to music, while defendant was in the driver's seat, slumped over the center console. Lawson testified that he knocked on the car window, but defendant did not wake up. Lawson motioned to Tom to wake defendant, which he did by shaking him. Lawson asked defendant to lower his window; defendant first rolled down the rear window before lowering the driver's window. Lawson asked defendant for identification and whether he had been drinking. Defendant responded, "we're good." Lawson testified that defendant's speech was slurred, and his eyes were bloodshot and glassy; further, he smelled an odor of alcohol coming from the vehicle. Lawson explained that he repeatedly asked defendant for his identification and for information, but defendant's answers were nonresponsive and did not make sense. For example, when asked for identification and whether he had been drinking, defendant repeatedly stated "we're fine," that they were on private property, and, later, that they were on public property. Based on his observations, Lawson asked defendant to exit the vehicle. He did not comply.

¶ 9 Officers Daniel Duda and John Haase arrived on the scene as backup. They both witnessed the vehicle straddling the curb and parkway. They observed defendant arguing with Lawson and appearing confused, and Duda testified that defendant's responses were "just kind of scattered." Haase stood at the driver's side of the vehicle and testified that defendant exhibited slow, slurred speech, seemed lethargic, and had bloodshot watery eyes. Haase testified that he smelled an odor of alcohol from inside defendant's vehicle. When he asked defendant his name, defendant responded that he was in a parked vehicle. Although defendant was repeatedly ordered out of the

vehicle (at least 10 times) and was informed that he was under arrest for obstruction, he did not exit. Duda ultimately assisted Lawson in forcibly removing defendant from the car.

¶ 10    Based upon "the totality of the scene with the way the vehicle was parked, the time of day," the odor of alcohol, and defendant's appearance, refusal to exit the vehicle and his nonresponsive answers, it was Haase's opinion that defendant was under the influence of alcohol. Similarly, Lawson testified that his training and experience led him to conclude that defendant was under the influence, given the way the vehicle was parked; defendant's bloodshot and glassy eyes, lethargy, and nonresponsive answers to questions; and the smell of alcohol. Duda testified that, other than his experience on how people generally behave, his involvement at the scene did not permit him to say unequivocally whether defendant was or was not under the influence of alcohol.

¶ 11    Lawson further testified that, at some point, defendant reached forward and turned the car off, although he could not see how defendant did so because the steering wheel blocked his view. The car used a key fob, which defendant put on the dashboard. Once defendant was placed inside the squad car, Lawson noticed a strong odor of alcohol in the squad car that had not been there before defendant's presence. Lawson testified that the dashboard video and microphone had been turned off when he asked defendant to perform field sobriety tests and that he asked him to do so on the way to the police station where they have a sheltered area to perform the tests, since it was cold outside. Once he arrived at the station, defendant refused a Breathalyzer test.

¶ 12    The video recording of the stop was played for the jury. (This court has also reviewed the video). In sum, the video shows the passenger side of the vehicle. Lawson can be heard speaking from the driver's side of the vehicle, and defendant's responses are mostly audible. Lawson asked defendant if he came from Bandito Barney's Beach Club, a restaurant and bar across the street from where the vehicle was parked, and defendant responded, "yes." When Lawson asked

defendant for identification, defendant responded, "we're good." Lawson asked for identification multiple times, and when defendant again responded, "we're good," Lawson disagreed, noting that the vehicle was resting over a curb, defendant had bloodshot, glassy eyes, and that defendant had lowered the rear window instead of the driver's window. Lawson asked for identification again, and defendant responded that he was in a "public place." When Lawson asked yet again for his identification, defendant asked why Lawson wanted it. Lawson explained he was investigating whether defendant operated a vehicle while intoxicated and asked defendant how he had started the vehicle; defendant again responded, "we're good." Instead of exiting the vehicle when asked and ordered to do so, defendant repeated his refrain of "we're good," he was "fine," and that he was on "private property." In short, defendant was repeatedly ordered out of the vehicle and was warned he would be arrested for obstruction. Lawson reiterated that defendant was not cooperating and that he could smell alcohol coming from the car; defendant insisted simply that he was in a parked car and not moving. Ultimately, the officers removed defendant from the car, handcuffed him, and walked him to Lawson's squad car.[1]

¶ 13    The court denied defendant's motion for a directed verdict. Defendant's brother Tom testified that he spent December 25, 2017, with defendant for the Christmas holiday. After seeing a movie together, defendant went home to eat leftovers, while, around 9 p.m., Tom drove defendant's car to Bandito Barney's for dinner. He could not recall if he parked the vehicle over the curb, but testified it was possible. Tom ate dinner and drank a beer, then consumed several shots of alcohol with other people at the bar. He described himself as having been drunk, and he

---

[1] At one point in the video, another person comes into view; apparently, the owner of Bandito Barney's arrived at the scene for a period.

called defendant to pick him up. Defendant arrived and helped Tom get into the car. Tom testified that defendant did not have anything to drink that day when they were together, nor did defendant smell of alcohol when he arrived to get Tom. Tom testified that he did not give the key fob to defendant. The last thing Tom recalled was sitting in the passenger seat of defendant's car.

¶ 14    Defendant testified that he spent Christmas day with Tom but did not want to go out for dinner. He let Tom drive his Range Rover to Bandito Barney's. The vehicle operates with a push-button start and requires a key fob, not an ignition key; the car unlocks when the key fob is nearby.

¶ 15    Defendant went to bed around 9:30 or 10 p.m. but awoke when Tom called to say he was at a bar and in trouble. Defendant took a taxi to Bandito Barney's and arrived around 12:15 a.m. on December 26, 2017. He saw his car parked over a curb when he arrived. He was mad, went into the bar to get Tom, and they returned to defendant's vehicle. Defendant started the car with the push button; Tom was still in possession of the key fob. Tom turned up the music and was dancing in the passenger seat. They were in the vehicle for around one minute when Lawson arrived.

¶ 16    Defendant denied that he was slumped over the center console and asleep. Rather, he testified that he pulled out his identification but dropped it on the floor. He bent over to find it in the dark. When he tried to show it to Lawson, Lawson would not take it. Defendant agreed that the video depicts Lawson continuing to request his identification, but he testified that he tried to hand it to Lawson three times. Defendant explained that he initially lowered both windows because the driver-side window was slow to come down and, when he hit the controls, both the drivers-side window and rear window rolled down at the same time. According to defendant, Lawson seemed angry and had his hand on his weapon. Defendant was scared. He elaborated that Lawson asked him how he was doing and then immediately asked him how much he had to drink.

Defendant said he responded, "none." Defendant testified that Lawson told him only that he was being placed under arrest for obstruction, and he never asked him to perform sobriety tests. Defendant agreed, however, that he refused a Breathalyzer test once he arrived at the police station because of the way he had been treated. He explained, "it seemed that everything was against me when I knew I didn't do anything wrong." Defendant also agreed that the officers informed him that they were investigating whether he was intoxicated and that he never told them that he was there to pick up his brother. Defendant testified that he did not consume any alcohol on Christmas day or the night of his arrest. He did not drive the car that night and did not retrieve the key fob from Tom.

¶ 17    The jury found defendant guilty on both aggravated DUI counts.

¶ 18                                  B. Posttrial Motions

¶ 19    Defense counsel filed a posttrial motion, but then withdrew. New counsel filed two more posttrial motions. In relevant part, defendant argued that the evidence was insufficient to sustain his convictions. Further, defendant claimed that his trial counsel, J. Brick Van Der Snick, was ineffective for failing to keep him informed about the legal proceedings and, for example, that the misdemeanor charges could be raised to felony charges. If he had known, defendant alleged, he might have told counsel he wished to negotiate a plea on the misdemeanor. Further, defendant alleged (*not* as an ineffective-assistance claim) that the State failed to timely disclose a video concerning defendant's arrest (although he did not specify the video, it appears he was referring to a booking video made at the station that went "missing"). In addition, in a second amended posttrial motion (filed after the hearing on his motions commenced), defendant argued that the State's Attorney's office had a policy to not offer plea agreements to defendants who petitioned to rescind their summary suspensions and, thus, his felony prosecution was vindictive.

¶ 20    At a hearing on the motions, Van Der Snick was questioned about the contested issue whether defendant was offered field sobriety tests and that, according to Lawson, he offered the tests exactly when the audio cuts out in the video from the squad car. Van Der Snick was asked if he investigated why the audio stopped on the video, and he answered no. He was then asked if he considered "what other remedies may have existed at law in order to have that video excluded from evidence at trial?" After some clarifying questions, Van Der Snick answered that he did not investigate why the audio on the video "blanked out" for a minute.

¶ 21    Further, Van Der Snick was asked whether, prior to setting the case for trial, he ever discussed with defendant the possibility of pleading guilty. He replied that he had, but, for two reasons, defendant was not interested. First, defendant was a licensed private detective, and a conviction would have ramifications upon his license. Second:

> "*** because of the State's policy that if you run motions, you don't get an offer. The motion [to rescind the statutory summary suspension of his license] had been run by his prior attorney, so we were told there was going to be no plea negotiations because it had been enhanced to a felony and they had ran [*sic*] the statutory summary suspension ***."

¶ 22    On cross-examination, defense counsel asked Van Der Snick to describe the "standing rule that if motions are run, then the State's Attorney's office no longer discusses plea agreements." Van Der Snick elaborated:

> "Yes, sir. It is a—whether it is written or unwritten, it's the policy of this [S]tate's [A]ttorney's office and it has been for a long time and they tell us this. That if you want to negotiate for a disposition, you better not run, my words, that we shouldn't run motions because then there will be no negotiations for settlement, sir."

¶ 23    Van Der Snick disagreed with counsel's characterization of the purported policy as a threat to enhance misdemeanors to felonies:

> "No. They never threatened me. They just tell me that this is their policy and we understand that. I have had it several times where I will advise a client that they are not threatening me, they are just telling me that's their policy which I understand and it says if you make them work and you go to a motion, you don't get a plea offer. You have to either go to trial or do a blind plea before the Judge, sir."

¶ 24    On re-cross, the assistant State's Attorney confirmed with counsel that, regardless of any alleged policies, defendant did not want an offer because, if convicted of a DUI, he could lose his license. However, defendant later testified that this was not true. In argument, the assistant State's Attorney noted that defendant's misdemeanor case was enhanced to a felony case because of his prior DUI violations.

¶ 25    On November 6, 2020, the court allowed additional argument. The assistant state's attorney reiterated that the alleged policies in the State's Attorney's office were irrelevant, because defendant did not want an offer due to the possible effect on his license and career. Further, she noted the record reflected that, on July 11, 2018, defendant *was* tendered an offer, which was well after his summary suspension hearing. The fact that trial was set shortly after the offer was tendered supported Van Der Snick's testimony that his client could not accept an offer or he would lose his license and job. In addition, she noted that enhancing defendant's charges from misdemeanors to felonies was not the result of prosecutorial vindictiveness and, further, that as an officer of the court, she represented that the State's Attorney's office had no policy that negotiated dispositions would not be allowed if pretrial motions or hearings were pursued. Further, she continued, the argument did not make sense in that there was no threat of "new" charges, where

defendant was already facing charges for DUI and they were upgraded because of defendant's criminal history. And again, she noted, the allegation of prosecutorial vindictiveness also failed because defendant *was* tendered an offer.

¶ 26    The court denied defendant's posttrial motions. In doing so, it commented that "every day in this courtroom and in this courthouse," misdemeanor charges are routinely enhanced after a defendant's criminal history is further investigated. The court stated that it often happens that petitions to rescind are pursued on misdemeanor cases and that "there are still offers and most of those cases still plead." The court explained that defendant's position on that issue was simply untrue. Further,

> "So I don't know how any of this implicates any of the defendant's rights because none of it happened. He did get to have a hearing on the petition to rescind. He still got an offer. You know, there was no—he wasn't penalized in any way because of any of those things happening, Mr. Van Der Snick's testimony notwithstanding. There is no policy in the State's Attorney's Office that if you run motions, you don't get an offer. I've been practicing in Kane County since 1982 as [Rule] 711, and there's never been such a policy. There never has been such a policy. Where Mr. Van Der Snick came [up] with that, I don't know, but there is no such policy. There may be individual attorneys who will revoke an offer if you go too far with motions and so forth, but again, I'm just speculating on that because I don't even know if that's true. It's certainly not an office policy."

## C. Sentencing

¶ 27    As previously noted, defendant was charged with aggravated DUI because he violated the DUI statutes on at least two prior occasions. After hearing argument, the court sentenced

defendant to two years of probation, along with community service and various fines, fees, and costs. Defendant appeals.

¶ 28                                    II. ANALYSIS

¶ 29                        A. Sufficiency of the Evidence

¶ 30    Defendant argues first that the evidence was insufficient to establish intoxication. He notes that there was no testimony presented at trial that he consumed any alcoholic beverages. Although officers Lawson and Haase testified that they smelled an odor of alcohol coming from the vehicle, Tom was also in the car and admitted to drinking numerous alcoholic beverages. According to defendant, there was no way to determine whether the smell emanated from him or Tom. Further, defendant asserts that there were no sobriety tests offered or performed, nor evidence that he parked the car over the curb or even drove the car. In fact, Tom was the only person to testify to driving the vehicle. As the State did not produce evidence that he was so intoxicated that he was unable to operate his vehicle, defendant contends that his conviction must be reversed. For the following reasons, we disagree.

¶ 31    When reviewing a challenge to a conviction based on the sufficiency of the evidence, we view the evidence in the light most favorable to the State and decide whether any rational trier of fact could find all elements of the crime proven beyond a reasonable doubt. See, *e.g.*, *People v. Brown*, 2013 IL 114196, ¶ 48. The trier of fact is responsible for resolving conflicting testimony, weighing the evidence, and drawing reasonable inferences therefrom. See *People v. Morris*, 2014 IL App (1st) 130512, ¶ 16. Accordingly, we will not substitute our "judgment for that of the trier of fact on issues involving the weight of evidence or the credibility of witnesses." *People v. Siguenza-Brito*, 235 Ill. 2d 213, 224-25 (2009). In other words, we will not "reweigh the evidence" (*People v. Phillips*, 2015 IL App (1st) 131147, ¶ 26), and we "will not set aside a conviction unless

the evidence is so improbable or unsatisfactory that it creates a reasonable doubt as to the defendant's guilt" (*People v. Diaz*, 377 Ill. App. 3d 339, 344 (2007)).

¶ 32    To prove a defendant guilty of DUI, the State must prove that defendant (1) was in actual physical control of the vehicle and (2) was under the influence of alcohol. 625 ILCS 5/11-501(a)(2) (West 2016); see *People v. Gordon*, 378 Ill. App. 3d 626, 631 (2007). Defendant here challenges only the second element, *i.e.*, whether he was proved to be under the influence of alcohol. To sustain the conviction, the State must have established that defendant was under the influence to a degree that rendered him incapable of driving safely. See, *e.g.*, *People v. Workman*, 312 Ill. App. 3d 305, 310 (2000). "Intoxication is a question for the trier of fact to resolve on the basis of having assessed the credibility of the witnesses and the sufficiency of the evidence." *Morris*, 2014 IL App (1st) 130512, ¶ 20. Moreover, "circumstantial evidence alone may suffice to prove a defendant guilty of DUI" (*id.* ¶ 20), as can the testimony of a single, credible police officer (*Phillips*, 2015 IL App (1st) 131147, ¶ 18). Indeed, when the arresting officer provides credible testimony, "[s]cientific proof of intoxication is unnecessary to sustain a conviction for driving under the influence." *Gordon*, 378 Ill. App. 3d at 632.

¶ 33    Here, viewing the evidence in the light most favorable to the State, we conclude that the circumstantial evidence was sufficient to prove defendant guilty of aggravated DUI. Officer Lawson testified that, when he approached the vehicle, defendant was slumped over the center console and Tom had to shake defendant to wake him. Officers Lawson and Haase testified to smelling an odor of alcohol emanating from the vehicle; both were standing closest to defendant, not Tom, at the driver's side of the vehicle. In addition, Lawson testified that, once defendant was placed inside of the squad car, the vehicle smelled of alcohol. A reasonable trier of fact could infer from (1) the manner in which defendant's vehicle was running and parked, *i.e.*, over the parking

spot curb and onto the parkway, which was confirmed by pictures presented to the jury; (2) the time (early morning hours) and location (across from Bandito Barney's, a bar); and (3) defendant's and Tom's admissions to having been inside Bandito Barney's, that defendant had consumed alcohol and drove the car forward over the curb and onto the parkway. Further, all three officers testified that defendant's answers to their questions were nonsensical and unresponsive, as confirmed by the video recording. For example, defendant repeatedly claimed that he was "fine" and in a public place, then in a private place, when asked for his identification. He was asked and ordered *numerous* times to exit the vehicle and did not do so. Lawson and Haase also testified that, based on their training and experience, it was their opinion that defendant was under the influence of alcohol. In addition, while defendant performed no field sobriety tests and there was a dispute as to whether he was offered that opportunity, he *did* refuse a Breathalyzer test. The refusal to take a Breathalyzer test may be considered circumstantial evidence of consciousness of guilt. See *Morris*, 2014 IL App (1st) 130512, ¶ 20; see also *People v. Tartara*, 2018 IL App (2d) 160207, ¶ 35. The jury could reasonably have found unconvincing defendant's explanation that he refused to take the test because of how he had been treated that evening and, instead, reasonably inferred that, in light of all of the circumstantial evidence, that defendant refused the test because he was intoxicated. Finally, Lawson and Haase both testified that defendant had bloodshot, glassy eyes, seemed lethargic, and his words were slurred. See *People v. Love*, 2013 IL App (3d) 120113, ¶ 35 (testimony that a defendant's breath smelled of alcohol and his or her eyes were glassy and bloodshot is relevant evidence of the influence of alcohol).

¶ 34    When presenting his case, defendant disputed some of the above evidence, but resolving conflicting testimony was the jury's function, and we will not substitute our judgment for that of the jury. See, *e.g.*, *Tartara*, 2018 IL App (2d) 160207, ¶ 23. For example, although Lawson

testified he offered them, defendant testified that he was never offered the opportunity to complete sobriety tests. The jury could have found more credible that he was offered the tests, but refused, just as he had done with the Breathalyzer test. Or, even if the jury accepted defendant's position as true, given the fact that no audio confirmed that Lawson offered those tests, it nevertheless could have simply considered the absence of such testing opportunities *outweighed* by defendant's refusal to take the Breathalyzer test. Further, although defendant argues that Tom testified to both driving the car and, later, drinking, such that Tom could have been responsible for the smell of alcohol and parking the car over the curb, the jury was free to decide what weight to give this evidence. We also note that, although Tom testified that he drove and parked defendant's car, he did not affirmatively testify that he parked the car over the curb. Defendant urges that the evidence showed that there was snow on the ground and perhaps Tom did not see the curb; yet, Lawson testified that the curb was visible, and the photographs and video corroborate that testimony. Similarly, defendant argues that he was not slumped over and asleep, but, rather, was looking for his dropped identification to hand to Lawson. The jury, again, could have rejected this testimony, given Lawson's testimony that he repeatedly asked for identification, but defendant never provided it, which was corroborated by the video. The jury could have reasonably concluded that defendant's refusal to produce identification or exit the vehicle, as well and his nonresponsive and nonsensical answers to questioning, reflected alcohol-induced impaired thinking and judgment. Defendant is correct that the State did not present witnesses who saw him drinking or driving, but that does not render the remaining evidence insufficient. Rather, defendant's arguments ask this court to reconsider and reweigh the evidence, which we may not do. In sum, given the credible testimony from the three police officers, along with the circumstances at the scene (the vehicle's position, defendant's bloodshot, glassy eyes, and nonresponsive answers to questions, and the odor

of alcohol), photographs and video of the scene and stop, and defendant's refusal to take a Breathalyzer test, which can be evidence of consciousness of guilt, proof of intoxication was sufficient to sustain defendant's conviction for aggravated DUI. See *Morris*, 2014 IL App (1st) 130512, ¶ 22.

¶ 35                           B. Ineffective Assistance of Counsel

¶ 36    Next, defendant argues that he received ineffective assistance of trial counsel when counsel failed to move for exclusion of the audio/video evidence from the stop. Defendant explains that using video recordings as trial evidence is common practice and that there exist laws concerning recording equipment in squad cars, including that both audio and video be captured and stored for specified periods. Here, he contends, the video of the stop and arrest was the only reasonable basis upon which the jury could have found him guilty, yet audio was "strangely absent at times" and cut out at the precise moment that Lawson testified that he asked defendant to perform field sobriety tests. Further, defendant notes that he does not appear in the video until after he was forcibly removed from his vehicle and is accompanied to the squad car. Defendant asserts that a technical malfunction may be inferred, given that the State offered no explanation as to the missing audio portion, and that a discovery sanction barring the State from introducing testimony regarding what was contained in the video recording would have been proper. As the video was the only reasonable evidence from which the jury could have concluded that he was intoxicated, and it was crucial to the State's case, defendant argues that it was incumbent upon trial counsel to move for its exclusion, or for the court to *sua sponte* exclude it. We reject defendant's arguments.

¶ 37    Preliminarily, this claim is forfeited. Although defense counsel mentioned the missing audio when addressing the court during the posttrial hearing, and Van Der Snick was asked whether he investigated why the audio stopped during a portion of the traffic stop video, this

specific ineffective-assistance issue was not raised in defendant's posttrial motion. Rather, defendant alleged that his trial counsel was ineffective for failing to keep him informed about the legal proceedings. See, *e.g.*, *People v. Enoch*, 122 Ill. 2d 176, 187 (1988) (failure to include an issue in a posttrial motion results in forfeiture of that issue on appeal). In his reply brief, defendant notes that he raised ineffective assistance in his posttrial motion but admits that he did so without specifically mentioning the dashboard video. However, defendant notes that ineffective-assistance claims may not be readily apparent from what exists in the record and may be based on what is absent from the record. This assertion does not help defendant, as both the video recording and the lack of a motion to suppress or exclude it are apparent from the record.

¶ 38 Defendant next requests that we review the issue for plain error. We may address a forfeited issue when an error is plain and: (1) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error," (prong one) or (2) the error is "so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence" (prong two). *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007); *People v. Herron*, 215 Ill. 2d 167, 178-79 (2005). Defendant contends that plain error here is satisfied on both prongs. For the following reasons, we disagree.

¶ 39 The first step in a plain error analysis is to determine whether a "plain error" occurred. See *Piatkowski*, 225 Ill. 2d at 564-65. In this context, the word "plain" is synonymous with "clear" and is equivalent to "obvious." *Id*. at 565 n.2. Defendant asserts that the error here is plain, because the evidence was closely balanced and the video bolstered the officers' testimony while marginalizing his own case by "the absence of the evidence not present in the defective dashboard recording." Further, defendant argues that the error was so serious that it affected the fairness of

his trial, because if the video has been suppressed, the jury would have been left with only the officers' testimony "unbolstered by the conspicuously present parts in the video that corroborated their testimony." In sum, defendant contends, because of alleged audio "malfunctions" that happened to coincide with key elements of the officers' trial testimony, counsel should have at least tried to suppress the recording. His failure to do so constitutes ineffective assistance and "because of its importance to the proceedings, it would have changed the fundamental nature of the evidence before the jury." Defendant emphasizes that the missing portions of the video would have corroborated his own testimony.

¶ 40    Defendant's forfeited claim is one of ineffective assistance and, thus, the question is whether counsel plainly committed an error constituting ineffective assistance by failing to move for suppression of the video. Claims of ineffective assistance of counsel are analyzed by using the two-prong test established in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prevail, a defendant must show that counsel's performance was deficient, and that the deficient performance was prejudicial. *Id.* Prejudice is demonstrated where a defendant shows that a reasonable probability exists that, but for counsel's deficient performance, the result of the trial would have been different. See *People v. Enis*, 194 Ill. 2d 361, 376 (2000). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. The failure to establish either *Strickland* prong precludes a finding of ineffective assistance of counsel. See *People v. Henderson*, 2013 IL 114040, ¶ 11. Generally, we consider trial counsel's decision whether to file a motion to suppress as a matter of trial strategy, entitled to great deference. See *People v. Bew*, 228 Ill. 2d 122, 128 (2008). Further, where an ineffectiveness claim is based on counsel's failure to file a suppression motion, "in order to establish prejudice under *Strickland*, the defendant must demonstrate that the unargued suppression motion is *meritorious*, and that a

reasonable probability exists that the trial outcome would have been different had the evidence been suppressed." (Emphasis added.) *Henderson*, 2013 IL 114040, ¶ 15. A reviewing court will not find counsel's performance deficient where the motion would have been futile. See *People v. Patterson*, 217 Ill. 2d 407, 438 (2005).

¶ 41    Here, although defendant refers to "key" missing portions of audio that would have supported his testimony, as well as audio "malfunctions" that happened to coincide with "key" elements of the officers' trial testimony, the only missing audio that he identifies is when Lawson purportedly asked him to perform field sobriety tests: defendant testified that he never did so and the missing audio would have confirmed that Lawson never offered them, while Lawson testified at both the summary suspension hearing and at trial that the dashboard video and microphone had been turned off when he asked defendant to perform field sobriety tests on the way to the police station. Thus, although defendant suggests that the State provided no explanation for the missing audio and that a malfunction must be inferred, this is incorrect. The State *did* provide an explanation through Lawson's testimony: he had turned off the audio.

¶ 42    Moreover, defendant does not argue, for example, that the video was tampered with or that the State committed a discovery violation with respect to producing this video. Indeed, other than his opinion that the jury could have used it to find credible the officers' testimony, *i.e.*, that the video was prejudicial to him, defendant offers no basis upon which trial counsel could have in good faith moved to exclude the recording, let alone one that would have resulted in successful suppression of the video. That evidence may be prejudicial is not, alone, a basis to exclude it. Indeed, defendant's argument falls far short of rebutting the presumption that counsel's decision was one of sound trial strategy. Indeed, the fact that the jury viewed and listened to the video and witnessed that there was suddenly no audio when Lawson purportedly asked defendant to perform

sobriety tests could also have favored defendant, if the jury found the timing of the missing audio suspicious. Allowing the video into evidence gave defense counsel the opportunity to argue that the audio "conveniently" stopped at a point that would have favored his client, implying Lawson was not credible in his testimony. As noted above, not only do we defer to trial counsel's decisions on suppression motions, an ineffective-assistance claim based on the failure to move to suppress must demonstrate that motion would have been meritorious. See, *e.g.*, *Henderson*, 2013 IL 114040, ¶ 15. Defendant does not offer a proper legal basis for suppression and, therefore, has not established that the motion would have been meritorious. Again, we will not find counsel's performance deficient where the motion would have been futile. *Patterson*, 217 Ill. 2d at 438.

¶ 43 Nor has defendant established the prejudice prong of his ineffective-assistance claim. Again, the jury could have found the absence of audio suspicious. But we disagree with defendant that the video was the only reasonable basis upon which the jury could have found him guilty. As mentioned in our resolution of defendant's sufficiency claim, it could have found that defendant's admitted refusal to take a Breathalyzer test outweighed any credibility it might have given to his claim that sobriety tests were never offered. While the video recording did corroborate the officers' testimony, the testimony alone, along with the other circumstances of the vehicle's position on the curb, photographs of such, and defendant's refusal to take the Breathalyzer test, would have sufficiently sustained the jury's verdict, even if the video had been successfully excluded.

¶ 44 In sum, defendant has failed to establish that his trial counsel was ineffective and, thus, there was no plain error to support his plain-error arguments. We honor the forfeiture.

¶ 45                                  C. Vindictive Prosecution

¶ 46 Finally, defendant argues that his felony prosecution was vindictive, violated his right to due process, and that the State failed to overcome the presumption of prosecutorial vindictiveness that arose "in the absence of any other explanation for seeking a bill of indictment following the hearing on defendant's petition to rescind statutory summary suspension." Defendant explains that a prosecution is vindictive when it is pursued in order to punish a person for doing what the law allows him or her to do. Here, consistent with Van Der Snick's testimony that the Kane County State's Attorney's office has a policy that, "if you run motions, you don't get an offer," defendant claims that he did not receive an offer after a hearing on his civil petition to rescind his statutory summary suspension. Rather, after the hearing, "without explanation of record," the State indicted him for aggravated DUI, even though the felony indictment was based upon the same facts previously alleged in the misdemeanor charge. Defendant emphasizes that the indictment was initiated only *after* his hearing on the petition to rescind. Since the criminal prosecution violated his due process rights, defendant contends that the remedy is to dismiss the vindictive charges against him.

¶ 47 We reject defendant's arguments.[2] A prosecutor violates the due process clause of the fifth amendment by exacting a price for a defendant's exercise of an established right, or by punishing a defendant for doing what the law plainly entitles him to do. See *United States v. Goodwin*, 457 U.S. 368, 372 (1982). However, to rebut the presumption that prosecutions are undertaken in good

---

[2] We note that our resolution of this issue does not rely on the trial judge's commentary regarding his experience as a practicing attorney in Kane County or his assertion that the State's Attorney's office has no policy like that alleged by defendant. The commentary did not constitute evidence and bordered on improper testimony.

faith, a defendant must prove that the prosecutor acted with genuine animus or retaliatory motive against him or her *and* that, but for that animus or motive, he or she would not have been prosecuted. See, *e.g.*, *People v. Kun Lee*, 2011 IL App (2d) 100205, ¶ 14. The defendant may use circumstantial evidence but must demonstrate that the circumstances show a realistic likelihood of vindictiveness, which almost never applies to a prosecutor's pretrial decisions. *Id.* ¶ 15.

¶ 48 Here, the record outright contradicts defendant's contentions. First, although defendant was initially charged with misdemeanor DUI, and although he disputed the charges overall, he does not argue that, given his criminal history, the charges pursued in the felony indictment were improper or unsupported. Defendant instead points simply to the timing of the charges and Van Der Snick's comments at the hearing concerning the office's policy that a defendant will not get an offer if he or she "runs" motions. However, even if true, such a policy does not necessarily equate to a prosecutor having genuine animus or retaliatory motive against a defendant, especially when the charges were not improper. Again, the record reflects that the indictment charges were supported by defendant's criminal history. Therefore, defendant cannot show that, but for that animus or motive, he would not have been prosecuted.

¶ 49 Second, although defendant claims that the State failed to overcome the presumption of prosecutorial vindictiveness that arose "in the absence of any other explanation for seeking a bill of indictment following the hearing on defendant's petition to rescind statutory summary suspension," the State *did* provide an explanation for seeking an indictment. Again, defendant's criminal history supported aggravated DUI felony charges.

¶ 50 Finally, the entire basis of defendant's claim implies prejudice, *i.e.*, that had he not pursued a petition to rescind the statutory summary suspension of his license, the State might have been amenable to presenting him with an offer. He repeatedly asserts that he received no offer. Again,

however, the record reflects that the State *did* present an offer before trial and after the hearing on the summary suspension. Specifically, the record contains an order dated July 11, 2018, that the parties agreed to a continuance, "State tenders offer," and the case was continued for status. Defendant presumably rejected the offer, as an October 18, 2018, order reflects that defendant was arraigned, entered a not-guilty plea, and the case was set for trial. Nowhere in his appellate briefs does defendant address the order reflecting that the State extended him an offer, which he rejected. Yet this fact eviscerates his claim that the State's Attorney's office had a policy to not extend offers to defendants who "run" pretrial motions because, if such a policy exists, defendant did not suffer prejudice from it. Defendant's vindictive-prosecution claim fails.

¶ 51                                    III. CONCLUSION

¶ 52    For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 53    Affirmed.